Alphonso SAMUELS, Plaintiff–Appellant,

v.

J. MOCKRY, G. Hewston, W. Higgins
and J. Dowdle, Defendants–
Appellees.

No. 534, Docket 94–2696.

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1995.

Decided Feb. 20, 1996.

Mark E. Greenfield, New York City (Arthur S. Linker and David A. Cohen, Rosenman & Colin, New York City, on the brief), for Plaintiff–Appellant Alphonso Samuels.

Denise A. Hartman, Assistant Attorney General of the State of New York, Albany, New York (Peter H. Schiff, Deputy Solicitor General, and Nancy A. Spiegel, Assistant Attorney General, on the brief), for Defendants–Appellants J. Mockry, G. Hewston, W. Higgins and J. Dowdle.

Before: LUMBARD, ALTIMARI and JACOBS, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Alphonso Samuels, an inmate in the custody of the New York Department of Correctional Services, appeals from a judgment of the United States District Court for the Northern District of New York (McCurn, *J.*), entered November 22, 1994, denying his motion for summary judgment and granting the defendants' motion for summary judgment dismissing Samuels's *pro se* complaint. Samuels's complaint alleged that the defendants placed him in a "limited privileges" prison program without affording him a hearing or giving him a statement of reasons for their action, in violation of his right to procedural due process. The district court adopted the magistrate judge's report and recommendation, which (i) found that Samuels had refused a work assignment that the prison officials had offered him and (ii) concluded that, under New York law and prison regulations, Samuels could therefore be placed in a limited privileges program without a hearing. On appeal, Samuels contends that entry of summary judgment was inappropriate because a genuine issue of material fact remains as to whether or not he refused a work assignment.

We vacate the order granting summary judgment for defendants and remand this case to the district court for further proceedings.

## BACKGROUND

According to the regulations in force at Clinton Correctional Facility ("Clinton"), "all able-bodied inmates are expected to participate in work assignments ... when they are offered" and those who refuse work assignments are placed in the limited privileges program. Inmates in the limited privileges program are confined to their cells for 23 hours per day (with one hour for exercise), and have restricted access to, among other things, showers and the prison library. On or about April 21, 1989, inmate Alphonso Samuels was placed in the limited privileges program at Clinton, supposedly for having refused a work assignment, and stayed there until his transfer to Attica Correctional Facility seven months later.

On March 20, 1991, Samuels brought a *pro se* action pursuant to 42 U.S.C. § 1983 against defendants John Mockry, the Clinton education counselor; Geoffrey Hewston, a Clinton correctional officer; William Higgins, the Clinton industrial training supervisor; and James Dowdle, an instructor at Clinton. All defendants were members of the Clinton Program Committee, the body charged with assigning work to prison inmates and with placing inmates that refuse work assignments in the limited privileges program. Samuels's complaint alleged that he never refused a work assignment and was not afforded a hearing prior to being placed in the limited privileges program, and claimed that his placement therefore violated his right to procedural due process. The complaint also alleged that he was placed in the limited privileges program for "retaliatory" reasons.

Samuels's case was referred to Magistrate Judge Ralph W. Smith, Jr., who recommended on August 15, 1994 that the district court deny Samuels's motion for summary judgment and grant the defendants' cross-motion for summary judgment. In an order entered November 22, 1994, the district court approved and adopted the magistrate judge's report and recommendations, denied Samuels's motion for summary judgment and granted the defendants' cross-motion for summary judgment. Samuels appeals that decision.

## DISCUSSION

A. *Summary Judgment.*

This Court reviews a district court's grant of summary judgment *de novo. Giano v. Senkowski,* 54 F.3d 1050, 1052 (2d Cir.1995). Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). On appeal "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at

247–48, 106 S.Ct. at 2510 (emphasis in original). The non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, the non-movant " 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.' " *Piesco v. City of New York,* 933 F.2d 1149, 1154 (2d Cir.) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983)), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

■ In one respect, we conclude that a material issue of fact was resolved erroneously in favor of the defendants rather than Samuels. The magistrate judge's Recommendation and Report states:

> In their cross-motion, defendants have demonstrated that, during the time period at issue in this action, plaintiff had been placed in a so-called "limited privileges program" at Clinton *based upon his refusal to accept a program assignment* within the prison. It is well settled in this district that such confinement is administrative rather than disciplinary in nature, and that inmates who refuse to accept a program assignment can be placed in limited privileges status without being issued a misbehavior report and without a hearing.

(Citations omitted and emphasis added). However, Samuels's Rule 10(j) statement, to which he swore, states that he "never refused to accept an assignment considered appropriate by the Program Committee." [1] In deciding whether "a reasonable jury could return a verdict" for Samuels, the magistrate judge should have accepted this sworn allegation as true. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Piesco,* 933 F.2d at 1154 ("We assess the record in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in her favor.").

Although Samuels should have prevailed on this issue of fact even if it was contested, we note that the defendants offered no competent evidence to refute Samuels's contention. In support of their cross-motion for summary judgment, the defendants relied on: (a) a Rule 10(j) statement by an assistant attorney general averring that Samuels was assigned to the limited privileges program "due to his refusal to accept an assignment considered appropriate by the program committee"; (b) an affirmation by the same assistant attorney general averring that "[t]here is no dispute" that Samuels was placed in the limited privileges program "for his refusal to accept a program"; and (c) a document addressed to Samuels signed by defendant Mockry, the chairman of the Program Committee, informing him that he was being assigned to the limited privileges program for his refusal to accept a work assignment. Neither the Rule 10(j) statement nor the affirmation is direct evidence refuting Samuels's allegations, since the statements they contain are merely conclusory allegations made by a person who lacks personal knowledge of what transpired at the Program Committee meeting on April 21, 1989. The document, if delivered to Samuels, would have informed him of the reason for his placement in the limited privileges program, but no proof was offered that the document was delivered to him.

■ "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Because the defendants did not demonstrate that Samuels "fail[ed] to make a showing sufficient to establish the existence of an element essential" to his claim, *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, and because the magistrate judge resolved a potentially crucial evidentiary issue against Samuels, summary judgment was improper. We therefore vacate the dis-

---

1. Samuels's memorandum of law opposing summary judgment, which of course was unsworn, also states that he "never refused a program and the defendants only said [he] refused a program so that they could retaliate against [him] for writing complaints against peers of the defendants."

trict court's order granting summary judgment to the defendants.

### B. *Sandin v. Connor.*

The defendants argue that there is an alternative ground for affirming the grant of summary judgment in their favor. Days after judgment was entered in the district court, the Supreme Court handed down its decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which considered whether an inmate's placement in disciplinary segregation implicates any protected liberty interest and fundamentally altered the way we go about answering that question. The defendants urge that we apply the analysis set forth in *Sandin,* conclude as a matter of law that Samuels had no protected liberty interest in avoiding placement in the Clinton limited privileges program, and thereby render immaterial any dispute about whether or not Samuels refused a work assignment.

The district court relied on cases decided using the then-determinative standard set forth in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), for analyzing whether a prisoner subjected to disciplinary or administrative confinement has a protected liberty interest under the Due Process Clause. Under *Hewitt,* a prisoner could allege a protected liberty interest where state law or regulation used " 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.' " *Sandin,* —— at ——, 115 S.Ct. at 2298 (quoting *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871). According to the *Sandin* Court, the *Hewitt* approach "encourage[s] prisoners to comb regulations in search of mandatory language on which to base" constitutional claims; "creates disincentives for States to codify prison management procedures" because standardized procedures may create additional liberty interests; and "has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* at ——, 115 S.Ct. at 2299. Because cases using *Hewitt*'s methodology "strayed from the real concerns under-

girding the liberty protected by the Due Process Clause," *id.* at ——, 115 S.Ct. at 2300, the *Sandin* Court constructed a new framework for analyzing claims of prisoners (such as Samuels) who are segregated from the general prison population. The Court recognized

> that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force; nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* (citations omitted and emphasis added). Applying this test to the case before it, the *Sandin* Court ruled that the respondent's thirty-day segregated confinement "though concededly punitive, does not present a dramatic departure from the basic conditions of [his] indeterminate sentence." *Id.* at ——, 115 S.Ct. at 2301. Such a departure occurs when the "segregated confinement . . . present[s] the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.*

 The *Sandin* decision applies retroactively. *See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 95–97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect. . . ."); *Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) ("As a rule, judicial decisions apply retroactively." (citation and quotation marks omitted)). This Court stated in *Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995), that "*Sandin* may be read as calling into question the continuing viability of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation." It is also unclear to what extent the *Sandin* analysis confers a liberty interest on inmates subject to a state regulation that has been held under the *Hew-*

**38**

*itt* line of cases to confer no liberty interest in the first place. *See Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir.1995) (noting that *Sandin* "did not instruct on the correct methodology for determining when prison regulations created a protected liberty interest"). An assessment as to whether an inmate has a protected liberty interest under *Sandin,* however, may require fact finding that the district court had no opportunity to do and that we are not in a position to undertake. Moreover, these questions may or may not be reached, depending on whether and when the district court resolves the fact issue (material under *Hewitt,* but arguably immaterial under *Sandin*) of whether Samuels refused a work assignment. *See Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995) ("Apart from any mandatory language in a regulation, the plaintiff also must prove that he suffered restraint which imposed an atypical and significant hardship. . . ." (emphasis and quotation marks omitted)). We therefore decline the defendants' invitation that we decide in the first instance whether Samuels has a protected liberty interest, and remand for further consideration.

## CONCLUSION

The judgment of the district court granting summary judgment to the defendants is vacated, and the case is remanded to the district court for further proceedings.