**INDEPENDENT LIVING AIDS, INC., and Marvin Sanders, Plaintiffs,**

v.

**MAXI-AIDS, INC., Harold Zaretsky, Mitchel Zaretsky, Elliott Zaretsky and Pamela Zaretsky Stein, Defendants.**

**No. 95 CV 656 ADS.**

United States District Court, E.D. New York.

Oct. 20, 1997.

Richard A. Hubell, of counsel, Dweck Law Firm, LLP, New York, NY, for Plaintiffs.

Mark S. Mulholland, of counsel, Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I. BACKGROUND

The plaintiff, Independent Living Aids, Inc. ("ILA"), and the defendant, Maxi–Aids, Inc. ("Maxi–Aids"), are New York corporations engaged in the mail-order business, specializing in products for the blind, visually impaired and physically disabled. This matter arises from the plaintiffs claims that from 1985 to 1994, the defendant engaged in state and federal copyright infringement, unfair competition, and deceptive trade practices by copying their products, their format, content, text, sequence, scope, art, procedures, and directions from the plaintiff's catalogs. (Plaintiff's Compl., Counts I–VIII, XI). The plaintiff also alleges that the defendant violated ILA's common-law trademark rights to the terms "ILA," "Can–Do Products," "Independent Living Aids," and "for independent living," and to ILA's diamond-shaped logo, by using these phrases and logo in Maxi–Aids brochures. (Plaintiff's Compl., Counts IX–XI). The plaintiff asserts that the defendant unlawfully interfered with ILA's economic benefits and trade rights by committing the above conduct, and by the following: "changing [its] bidding [for government contracts] in violation of governmental and institutional bidding procedures"; misrepresenting products in Maxi–Aids brochures; and misleading the public that Maxi–Aids was owned by a woman and disadvantaged individuals when it was not (Plaintiff's Compl., Counts XII–XIII).

In addition, ILA's President and CEO, Marvin Sandler, raises a claim of slander against Elliot Zaretsky, the founder of Maxi–Aids, arising from a 1994 incident. Apparently, Sandler sent a letter, dated January 17, 1994, to Kenneth Jernigan, President Emeritus of the national Federation of the Blind ("NFB") and an occasional reporter for The Braille Monitor, a national journal published for the blind by NFB. The letter detailed many of the same complaints alleged in the instant lawsuit. When Jernigan called Zaretsky for comment, Zaretsky allegedly stated, "Marvin Sandler is a liar." Jernigan subsequently included Zaretsky's remark in a December, 1994 article on the controversy, giving rise to the instant slander claim. (Plaintiff's Compl., Count XIV).

Presently before the Court is the defendant's motion for summary judgment in its favor and dismissal of all fourteen (14) counts of the plaintiff's complaint, and the plaintiffs cross-motion for summary judgment in its favor on all fourteen (14) counts.

## II. SUMMARY JUDGMENT: THE STANDARD

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. City of New York*, 72 F.3d 1040 (2d Cir.1995).

Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### A. Counts I–XIII of the Plaintiff's Complaint: The Plaintiff's Claims of Trademark and Copyright Infringement, and of Unlawful Interference with Economic Benefits and Trade Rights.

In support of its motion for summary judgment, the defendant submitted a Rule 3(g) Statement, setting forth the material facts as to which Maxi–Aids contends there are no genuine dispute ("Defendant's Rule 3[g] Statement"). The defendant's Rule 3(g) Statement includes the following material "facts": (1) At its founding in 1977, ILA hired Milton Kaye, previously a writer-designer of mail-order catalogues for the not-for-profit American Federation for the Blind ("AFB"), including AFB's 1975 catalog (Defendant's Rule 3[g] Statement, ¶¶ 8–13, 25); (2) Kaye was responsible for designing and creating ILA's first mail-order catalog (Defendant's Rule 3[g] Statement, ¶ 14); (3) Kaye created ILA's catalog by copying the AFB catalogs he prepared while working at AFB (Defendant's Rule 3[g] Statement, ¶¶ 15–16); (4) ILA first filed its catalog for copyright registration in 1986, without informing the U.S. Copyright Office that the brochure had been copied, in part, from AFB catalogs (Defendant's Rule 3[g] Statement, ¶¶ 17, 22–23); (5) From 1986 to 1995, ILA did not commence any legal action or case concerning the claims raised in this suit (Defendant's Rule 3[g] Statement, ¶ 34); (6) ILA solicits publicity photos and manufacturer-supplied literature distributed by product suppliers and has used those materials in its catalogs, as does Maxi–Aids, resulting in both catalogs containing similar photos and product descriptions (Defendant's Rule 3[g] Statement, 41).

In its Counter Statement Pursuant to Rule 3(g) ("Plaintiff's Rule 3[g] Statement"), the plaintiff controverts all of these "facts," and supports its dispute with detailed references to the depositions and exhibits. (*See* Plaintiff's Rule 3[g] Counter Statement). For example, the plaintiff disputes that it hired Kaye because he had designed AFB catalogs, that Kaye authored AFB's 1975 catalog that Kaye designed and wrote copy for ILA's 1977 catalogue, and that Kaye copied AFB's catalogue in creating ILA's brochure. (Plaintiff's Rule 3(g) Counter Statement, ¶¶ 10–11, 13–16, 25). Additionally, the plaintiff controverts that it never registered its catalog with the United States Copyright Office before 1986, claiming to have regis-

tered its 1985 catalog. (Plaintiff's Rule 3[g] Counter Statement, ¶ 17). The plaintiff also counters defendant's contention that from 1986 through 1995, ILA never raised any of the claims asserted in this lawsuit, pointing to legal correspondence from ILA's attorneys to Maxi–Aids' counsel during that period. (Plaintiff's Rule 3[g] Counter Statement, ¶ 34). In addition, the plaintiff disputes whether and to what extent ILA has used literature and photos provided by product manufacturers (Plaintiff's Rule 3[g] Counter Statement, ¶ 41).

Similarly, the facts asserted in ILA's Rule 3(g) Statement in Support of its Cross–Motion for Summary Judgment ("Plaintiff's Rule 3[g] Statement") are hotly contested by Maxi–Aids, which, like its adversary, supports its Counter Statement with references to the depositions and exhibits. For example, the defendant and plaintiff do not agree on a "core [factual] issue in the case," namely, whether ILA is "widely recognized" (as the plaintiff contends) as a company which markets and distributes products to the blind, visually impaired and physically handicapped. (Plaintiff's Rule 3[g] Statement, ¶ 2; Defendant's Rule 3[g] Counter Statement, ¶ 2). To cite a few more examples, the defendant disputes the following assertions of facts set forth in the Plaintiff's Rule 3(g) Statement: (1) Maxi–Aids has "taken product descriptions, photographs and catalog numbers directly from ILA's catalogs and used the same in their own catalogs" (Plaintiff's Rule 3[g] Statement, ¶ 13; Defendant's Rule 3[g] Counter Statement, ¶ 13); (2) Since 1985, ILA has identified itself to the public by the names and marks "Independent Living Aids," "ILA," "ILA" in design form, and "Can Do" (Plaintiff's Rule 3[g] Statement, ¶ 14; Defendant's Rule 3[g] Counter Statement, ¶ 14); (3) Maxi–Aids has used the ILA logo in its catalogs without ILA's permission (Plaintiff's Rule 3[g] Statement, ¶ 17; Defendant's Rule 3[g] Counter Statement, ¶ 17); (4) Maxi–Aids made material misrepresentations and violated certain guidelines in its bid for a contract with the Texas Commission for the Blind (Plaintiff's Rule 3[g] Statement, ¶ 24–25, 38; Defendant's Rule 3[g] Counter Statement, ¶ 24–25, 38); (5) Maxi–Aids submitted a false certification to the Veteran's

Administration in 1994, claiming to be a "woman-owned" and "disadvantaged" company, resulting in Maxi–Aids receiving a special preference in bidding for government contracts (Plaintiff's Rule 3[g] Statement, ¶¶ 35–37; Defendant's Rule 3[g] Counter Statement, ¶ 35–37); and (6) From 1986 through 1987, and in 1992, Maxi–Aids' catalogs contained photographs taken from the ILA catalog and listed watches in which the illustrations showed the ILA logo (Plaintiff's Rule 3[g] Statement, ¶ 39, 41; Defendant's Rule 3[g] Counter Statement, ¶ 39, 41).

To say that the parties' respective Rule 3(g) Statements are contradictory is an understatement. The plaintiff and defendant seemingly agree on little more than their names. This controversy over "core issues" raising numerous material issues of fact precludes this Court from granting either party's motion for summary judgment. Indeed, it is beyond comprehension how the parties can on the one hand argue that there are no genuine issues of material fact, and in the same breadth controvert each and every material fact asserted by their adversary. Accordingly, with respect to claims I–XIII, the defendant's motion for summary judgment is denied, and the plaintiff's cross-motion for summary judgment is denied.

### B. Count XIV of the Plaintiff's Complaint

■ Finally, the Court addresses the defendant's motion for summary judgment and dismissal, and the plaintiff's cross-motion for summary judgment in its favor, with respect to Count XIV of the plaintiff's complaint, alleging a cause of action for slander. Unlike the other thirteen counts of the complaint, the parties generally agree on the factual basis plaintiff's slander claim. According to a December, 1994 article published in *The Braille Monitor*, Elliot Zaretsky was asked to comment on accusations levied by Sandler and others regarding many of the same improper business practices alleged in this case (Def. Exh. L, December, 1994 issue of *The Braille Monitor*, page 678). As reported in the article:

Zaretsky['s] responses were fairly uniform. He said that Marvin Sandler is a liar. He

denied [that Maxi–Aids committed improper bidding practices]. He [said] that Schreier[, another accuser] is a liar. When we read him the statement from E.L. Bryenton[, another accuser], Zaretsky said that Bryenton was a liar.

(Def. Exh. L, December, 1994 issue of *The Braille Monitor,* page 678).

Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance. *Sprecher v. Dow Jones & Co.,* 88 A.D.2d 550, 450 N.Y.S.2d 330 (1st Dept.1982), *affd.,* 58 N.Y.2d 862, 460 N.Y.S.2d 527, 447 N.E.2d 75 (1983). The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader. If the words are not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction. *Carney v. Memorial Hosp. & Nursing Home,* 64 N.Y.2d 770, 485 N.Y.S.2d 984, 475 N.E.2d 451 (1985).

Read in the context of the entire article, Zaretsky's remarks, calling Sandler and others "liars," can only be understood as a denial of their accusations. The Court finds, as a matter of law, that this cannot be construed as defamatory. " '[E]ven the most careless reader must have perceived that the word[s were] no more than rhetorical hyperbole, a vigorous epithet used by [Zaretsky] who considered' himself unfairly treated and sought to bring what [he] alleged were the true facts to the readers." *Rizzuto v. The Nexxus Products Company,* 641 F.Supp. 473, 481 (S.D.N.Y.1986), *affirmed without opinion,* 810 F.2d 1161 (2d Cir.1986) (quoting *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6 (1970)) (references in trade journal to "unscrupulous sales people lying"; "lying salesperson," "rip you off," and "don't be conned," were mere hyperbole and did not establish basis for defamation action by hair care products manufacturer and its CEO against competitor manufacturer and its CEO). "The epithet 'liar' in this context, standing by itself, merely expressed the opinion that anyone who persisted in [accusing Zaretsky of improper business practices]

could not be [telling the truth]. Since the basis for this opinion was fully set forth, the communication of [Zaretsky's] views cannot be libelous.... *"Edwards v. National Audubon Society,* 556 F.2d 113 (2d Cir.), *cert. denied,* 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977). Thus, in the Court's view, the "liar" comment constituted Zaretsky's personal opinion and rhetorical hyperbole, rather than objective fact and, thus, was constitutionally protected. *See Ram v. Moritt,* 205 A.D.2d 516, 517, 612 N.Y.S.2d 671, 672 (2d Dept.1994); *see generally Immuno AG. v. J. Moor–Jankowski,* 77 N.Y.2d 235, 243, 566 N.Y.S.2d 906, 909, 567 N.E.2d 1270, 1273, *cert. denied,* 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991).

Accordingly, the defendant's motion for summary judgment and dismissal of Count XIV of the complaint is granted, and the plaintiff's cross-motion for summary judgment as to this claim is denied.

IT IS, THEREFORE, ORDERED THAT:

(1) For the foregoing reasons, the defendant's motion for summary judgment, and the plaintiff's cross-motion for summary judgment, pursuant to Fed. R.Civ.P. 56(b), are denied with respect to Counts I through XIII of the complaint; and

(2) The defendant's motion for summary judgment, dismissing Count XIV of the complaint is granted; and

(3) The plaintiff's cross-motion for summary judgment in its favor with respect to Count XIV of the complaint is denied; and

(4) The parties are directed to appear in Courtroom A to select a jury on October 27, 1997, at 9:00 a.m.

SO ORDERED.