**Alphonso SAMUELS, Plaintiff–Appellant,**

**v.**

**J. MOCKRY; G. Hewston; W. Higgins; J. Dowdle, Defendants–Appellees.**

**Docket No. 96–2801.**

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1998.

Decided April 17, 1998.

J. Nelson Thomas, Rochester, NY (Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, of counsel), for Plaintiff–Appellant.

Martin A. Hotvet, Assistant Attorney General of the State of New York, Albany, NY (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, NY, of counsel), for Defendants–Appellees.

Before: VAN GRAAFEILAND, JACOBS and LAY,* Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This prisoner civil rights case comes before us for the second time. Plaintiff-appellant Alphonso Samuels previously appealed a summary judgment of the United States District Court for the Northern District of New York (McCurn, J.) dismissing his complaint against the defendant prison officials. We vacated that judgment on the ground that the district court had resolved a material factual issue against Samuels improperly and we remanded the case for further proceedings. *Samuels v. Mockry,* 77 F.3d 34, 36–37 (2d Cir.1996) (per curiam). On October 1, 1996, the district court granted the defendants' renewed motion for summary judgment, and once more Samuels seeks review. Because we hold that the issue of fact identified in this Court's prior opinion still exists and that summary judgment remains inappropriate, we again vacate and remand.

## BACKGROUND

We assume familiarity with the facts and analysis of our prior opinion. In brief, on January 20, 1989, Samuels, an inmate at New York's Clinton correctional facility, brought a § 1983 action in the Northern District of New York, alleging civil rights violations by certain prison officials. On April 11, 1989, the district court ordered that Samuels' complaint be served on the defendants named therein.

Ten days later, on April 21, 1989, the Clinton Program Committee placed Samuels in the prison's "Limited Privileges Program" ("LPP"), asserting that he refused to accept a mandatory work assignment. The placement in LPP resulted in Samuels being housed in Clinton's "E–Block," where prevailing conditions allegedly included 23–hour cell confinement, noise, cold, dampness, insects, cold showers, and unsanitary conditions. Samuels remained in the LPP and E–Block until his transfer out of Clinton in November 1989. Samuels did not complain or otherwise seek to undo his LPP status during the intervening seven months. He contends, however, that he did not refuse a work assignment during the Program Committee meeting or at any other time.

On March 20, 1991, Samuels brought the instant lawsuit against members of the Clinton Program Committee. He alleges that the defendants imposed LPP status and all its attendant hardships upon him without a hearing or a misbehavior report and that they did so only in retaliation for his having

---

* The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

brought the January 1989 action. In so doing, says Samuels, the defendants infringed his constitutional rights to due process and to petition the courts.

The district court first granted summary judgment to the defendants on November 22, 1994, adopting as its opinion the recommendation of Magistrate Judge Ralph W. Smith, which posited that the "defendants have demonstrated that ... plaintiff had been placed in [the LPP] at Clinton based upon his refusal to accept a program assignment." In vacating, we held that a genuine issue existed as to whether Samuels did or did not refuse a work assignment at Clinton. 77 F.3d at 36. As our prior opinion states, "Samuels' [Local] Rule 10(j) statement, to which he swore, states that he 'never refused to accept an assignment considered appropriate by the Program Committee.' In deciding whether 'a reasonable jury could return a verdict' for Samuels, the magistrate judge should have accepted this sworn allegation as true." *Id.*

We stated further that "[a]lthough Samuels should have prevailed on [the foregoing] issue of fact even if it was contested, ... the defendants offered no competent evidence to refute Samuels's contention." *Id.* We noted in this regard that the defendants' submissions in support of summary judgment consisted merely of statements by an assistant attorney general who lacked personal knowledge of the events in question and a copy of a document signed by defendant Mockry purporting to inform Samuels of the reason for his LPP assignment, neither of which gave a competent account of what transpired in the Program Committee meeting.

Finally, we noted that the Supreme Court's supervening decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), might warrant dismissal of Samuels' case, depending on whether Samuels' assignment to the Clinton LPP "impose[d] an atypical and significant hardship ... in relation to the ordinary incidents of prison life." 77 F.3d at 37 (quoting *Sandin,* at 484, 115 S.Ct. at 2300) (emphasis omitted). We declined to decide this question, however, on the ground that a *Sandin* analysis "may require fact finding that the district court

had no opportunity to do and that we are not in a position to undertake." *Id.* at 38.

Following remand, however, no *Sandin* fact finding or analysis took place in the district court. Instead, the defendants submitted further documentary evidence as to what transpired in the April 21, 1989 Program Committee meeting and, in reliance thereon, renewed their motion for summary judgment. Again, the magistrate judge recommended that summary judgment be granted in defendants' favor, and again Judge McCurn adopted the recommendation.

## DISCUSSION

This appeal places us in the unpleasant position of having to reverse a district court a second time for the same reasons that we previously reversed it. Magistrate Judge Smith's recommendation, which serves as the district court's opinion, is squarely contradictory of the holding of our prior opinion, which was that the district court should have accepted as true Samuels' allegation that he never refused a work assignment before being placed on LPP status. *Id.* at 36. On remand, the magistrate judge appears to have misconstrued this holding. In support of their renewed summary judgment motion, defendants filed affidavits and other papers purporting to establish that Samuels refused a work assignment when he was before the Committee and that this was the reason for his assignment to LPP status. In granting the motion, the magistrate judge apparently believed that our prior statements about the inadequacy of the defendants' showing were the determinative factor in our decision to reverse. This misreads our holding. As our prior opinion makes clear, "Samuels should have prevailed on this issue *even if it was contested.*" 77 F.3d at 36 (emphasis added).

■ In his recommendation, Magistrate Judge Smith justifies the result he reaches in two ways. First, he suggests that Samuels' opposing affidavit is insufficient to defeat summary judgment, because the document "does not even mention" the issue of whether Samuels refused a work assignment. We disagree. Samuels' affidavit states that "for little or no reason plaintiff was ... placed on

the [LPP], and all because of the conspiracy between the Program Committee staff that was out to get plaintiff because of his written complaints against staff, their peers, and agents." We read this statement as tantamount to a renewed denial by Samuels of any refusal to accept a work assignment, and the magistrate judge should have so construed it. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

▪ Second, the magistrate judge's recommendation states as an alternative basis for its conclusion that:

[e]ven if plaintiff had continued to deny that he ever refused a work assignment, ... the court would find that such a claim is incredible as a matter of law.... [For] if plaintiff was truly held in limited privileges status for *seven months* despite the fact that he never refused a work assignment, he undoubtedly would have vehemently protested such confinement. However, ... plaintiff has never so much as alleged that he ever wrote a single letter of protest to *anyone* ... complaining about such confinement. Plaintiff's silence in this regard is deafening.

In support of the magistrate judge's reasoning, defendants cite Samuels' affidavit of objections in which he explains his silence as follows: "Concerning plaintiff not complaining [about his LPP status], it was plaintiff [sic] position never to work again in Clinton because of this illegal assignment to the [LPP]." Defendants submit that this statement "flatly contradicts plaintiff's earlier denial of a refusal to work," and that this warrants summary judgment in their favor. We disagree. Giving Samuels the benefit all reasonable inferences, as we must, the quoted statement merely suggests that he was placed—by the defendants—in a position in which he would never again have the opportunity to work because they preferred to keep him confined in the LPP. Samuels' statement also could suggest that once consigned to the LPP, Samuels resolved to defy the Committee members by not working even if they offered to let him out of the LPP. In other words, we see nothing in Samuels' explanation or elsewhere in the rec-

ord to foreclose the possibility that Samuels elected to wait out his time in the LPP knowing that eventually he would be able to transfer to another prison and sue the defendants without fear of retaliation. This inference is buttressed by Samuels' statement in the same affidavit that "no inmate appeals assignment to the [LPP]."

In light of the foregoing possibilities, we reject the defendants' contention that Samuels' silence while in LPP establishes as a matter of law that this is a "mixed motive" case and/or renders their alleged constitutional violations "harmless." If it is true that Samuels did not refuse to accept a work assignment when he came before the Program Committee and that the defendants assigned him to LPP status in retaliation for his having sued prison officials, there was no mixed motive and Samuels suffered injury for which the defendants might be liable, at least nominally. Samuels' later silence may suggest a failure to mitigate damages, but his contention that "no inmate appeals assignment to the [LPP]" might, if proven, support a different conclusion. In any event, the question whether Samuels somehow could have extricated himself from the LPP by appealing to the defendants or other prison officials is a factual one that is unresolved on this record.

▪ In sum, there remains a genuine issue of fact which may be material to Samuels' § 1983 claim, namely whether his confinement in the Clinton LPP was a retaliatory response to his January 1989 lawsuit. We say the issue "may" be material because it remains an open question whether, under *Sandin*, the treatment complained of constituted an atypical and significant hardship compared to the general prison population.

## CONCLUSION

The summary judgment in favor of the defendants is vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.