**Laurence CICCONE and Christine Ciccone, Plaintiff,**

v.

**Mitchell HERSH, The New England Life Insurance Company, Burns Financial Partners, Inc., d/b/a The Burns Agency, and Triad Financial, n/k/a American Portfolios Financial Services, Inc., Defendants.**

**No. 06 Civ 1766.**

United States District Court, S.D. New York.

Jan. 8, 2008.

Michael Howard Smith, Rosenberg Feldman Smith, LLP, New York City, for Plaintiff.

Daniel Glenn Ecker, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, Andrew O. Bunn, Epstein, Mcdonald & McCarthy, Matthew Tracy, Winget, Spadafora & Schwartzberg, LLP, New York City, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Laurence Ciccone ("Ciccone") and Christine Ciccone (collectively, "Plaintiffs") brought this action in New York State Supreme Court against defendants Mitchell Hersh ("Hersh"), New England Life Insurance Company ("New England"), and American Portfolios Financial Services, Inc. ("American Portfolios") (collectively, "Defendants"). Defendants removed the case to this Court on the basis

of diversity jurisdiction. *See* 28 U.S.C. § 1332. Following removal, Plaintiffs filed an amended complaint alleging that Hersh breached his fiduciary duty owed to Plaintiffs as their financial advisor and/or broker, and that New England and American Portfolios are liable for Hersh's actions under the doctrine of respondeat superior. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), arguing that they do not owe Plaintiffs a fiduciary duty and that the claim is time-barred. For the reasons discussed below, Defendants' motions for summary judgment are GRANTED.

## I. *BACKGROUND* [1]

Hersh had been the personal investment and financial advisor for the Plaintiffs since 1992. In or around March and April 2000, Plaintiffs sought advice from Hersh about retirement and investment options. At that time, Hersh was dually registered as a representative with New England and American Portfolios pursuant to a Dual Registration Agreement (the "Agreement"). According to the Agreement, New England was responsible for supervising Hersh in connection with the solicitation and sale of its variable life insurance policies and American Portfolios was responsible for supervising Hersh in connection with securities or variable contracts approved by American Portfolio.

Ciccone was employed by Charles H. Schwab, Inc. ("Schwab") for approximately eighteen years and was entitled to receive options for shares of stock in Schwab (the "Shares") as part of his compensation package upon retirement. By April 2000, the Shares had declined in value from approximately $7 million to $5 million. In May 2000, Ciccone retired from Schwab and received approximately $5.6 million in exchange for the Shares.

With regard to the $5.6 million, Hersh recommended a variety of investments to Plaintiffs including variable annuities. In June and July 2000, Plaintiffs invested in an Alliance Ovation Variable Annuity (the "Annuity") and selected a portfolio of funds based on Hersh's recommendations and Plaintiffs' investment objective of growth with moderate to aggressive risk tolerance. As part of their investment strategy, Plaintiffs opted to take a penalty-free early withdrawal from the Annuity in the amount of $47, 565, 58 per month beginning in June 2000. In addition, Plaintiffs purchased three New England life insurance policies (the "Life Insurance Policies") at annual premiums ranging from $36,000 to $48,000 with potential payouts of approximately $5 million each. The Annuity and the Life Insurance Policies (collectively, "the Investments") were nondiscretionary, meaning that Plaintiffs retained full responsibility for trading decisions with respect to the Annuity and

1. The factual summary that follows derives primarily from the Amended Complaint, dated May 11, 2006 ("Am.Compl."); Affidavit of Laurence Ciccone, dated November 20, 2007 ("Ciccone Aff."); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, dated November 20, 2007; Declaration of Michael H. Smith, dated November 20, 2007 ("Smith Decl."); Plaintiffs' Response to New England's Rule 56.1 Statement, dated November 20, 2007; Memorandum of Law in Support of New England's Motion for Summary Judgment, dated Octo-

ber 9, 2007 ("New England's Mot."); Declaration of Daniel G. Ecker, dated October 9, 2007; Memorandum of Law of Hersh in Support of Motion for Summary Judgment, dated October 9, 2007; Declaration of Matthew Tracy, dated October 9, 2007; Declaration of Andrew O. Bunn, dated October 9, 2007; Hersh's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated October 9, 2007; and Affidavit of Frank Tauches, dated October 8, 2007. Except where specifically referenced, no further citation to these sources will be made.

only Plaintiffs were authorized to make changes to the Investments.

By September 2001, the value of the Annuity had decreased by more than 50 percent, but Hersh advised Plaintiffs to remain in the Annuity. In October 2001, Hersh was terminated by American Portfolios and the Annuity was transferred to New England as the new broker/dealer of record. In 2002, New England terminated Hersh. Plaintiffs last communicated with Hersh in or about January and February 2002. In November 2002, Plaintiffs were informed that Nationwide Planning Associates ("Nationwide") was the current broker/dealer of record for the Annuity and that Hersh was still the agent of record.

The National Association of Securities Dealers ("NASD") filed a complaint against Hersh that resulted in Hersh surrendering his license "to sell NASD securities, mutual funds, et cetera" in 2005. (*See* Smith Decl. ¶ 5(b).) By September 2006, the Annuity had approximately $48,000 remaining.[2]

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable infer-

ences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. *FIDUCIARY DUTY*

■■■ To state a claim for breach of fiduciary duty in New York, a plaintiff must demonstrate the existence of a fiduciary duty between the parties and a breach of that duty by the defendant. *See SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir.2004); *Thermal Imaging, Inc. v. Sandgrain Secs., Inc.*, 158 F.Supp.2d 335, 343 (S.D.N.Y.2001); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907, 2000 WL 335557, at *10 (S.D.N.Y. Mar. 29, 2000). A fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir.1991) (citation and quotation marks omitted). "Although the existence of fiduciary relationships under New York law cannot be determined by recourse to rigid formulas, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb*, 767 F.Supp. 1220, 1231 (S.D.N.Y. 1991).

---

**2.** Plaintiffs withdrew approximately $3.2 million from the Annuity between 2000 and 2006. (*See* New England's Mot. 8.)

In the instant case, Plaintiffs allege that Hersh, as their financial advisor and/or broker, owed Plaintiffs a fiduciary duty and breached that duty by recommending the Investments, which were not suitable or appropriate for Plaintiffs' personal and insurance needs. Defendants argue that Hersh owed no fiduciary duty to Plaintiffs because the Investments were established and maintained in a nondiscretionary account.

In *de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1302 (2d Cir.2002), the Second Circuit addressed the issue of the scope of the duty a broker owes a customer of a nondiscretionary account and articulated the applicable standards. It stated that:

> [i]t is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary account, or to give advice to such a customer on an ongoing basis. The broker's duties ordinarily end after each transaction is done, and thus do not include a duty to offer unsolicited information, advice, or warnings concerning the customer's investments. A nondiscretionary customer by definition keeps control over the account and has full responsibility for trading decisions. On a transaction-by-transaction basis, the broker owes duties of diligence and competence in executing the client's trade orders, and is obliged to give honest and complete information when recommending a purchase or sale. The client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention. *See, e.g., Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir.1999) (broker's fiduciary duty is limited to the "narrow task of consummating the transaction requested"); *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940–41 (2d Cir.1998)

(in a nondiscretionary account, "the broker's duties are quite limited," including the duty to obtain client's authorization before making trades and to execute requested trades) ... The giving of advice triggers no ongoing duty to do so.

*de Kwiatkowski*, 306 F.3d at 1302.

■ Under these principles, there is no basis here to support a ruling that, when Hersh made recommendations to Plaintiffs with respect to the Investments, he established an ongoing relationship embodying fiduciary duties to provide advice and protect Plaintiffs from further losses. The Court does not need to address the limited scope of the relationship that arose between the parties and the duties associated with it as of the time Hersh made recommendations concerning the Investments. For the reasons stated below, even if Hersh assumed some form of fiduciary duties at that point, any such obligations did not extend into an ongoing relationship giving rise to Plaintiffs' claims. Moreover, any claim Plaintiffs may have arising from any such limited fiduciary relationship is now time-barred.

Plaintiffs claim that, even though the Investments were nondiscretionary, Hersh owed them a fiduciary duty until 2005 based on a continuing relationship. The Court disagrees.

With respect to nondiscretionary accounts, the Second Circuit has recognized that, in "special circumstances," a broker may owe a broader duty to a client than a purely transactional one to prevent the brokers from taking "unfair advantage of their customers' incapacity or simplicity." *de Kwiatkowski*, 306 F.3d at 1308–09 (*citing Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*, 251 A.D.2d 137, 674 N.Y.S.2d 648, 649 (App. Div. 1st Dep't 1998); *Leib v. Merrill Lynch, Pierce, Fen-*

*ner & Smith, Inc.*, 461 F.Supp. 951, 954 (D.Mich.1978); *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107, 113 (D.Ala.1971)). The Court, however, is not persuaded that Plaintiffs are the "naive and vulnerable client[s]" who are protected by "special circumstances." *Id.* at 1309. Plaintiffs do not allege they had "impaired faculties", . . . "a closer than arms-length relationship with [Hersh]," or that they are "so lacking in sophistication that de facto control of the [Investments was] deemed to rest in [Hersh]." *Id.* at 1308. On the contrary, Ciccone worked on the floor of the New York Stock Exchange for Schwab for over twenty years and retired as a floor broker responsible for executing trades. (*See* Ciccone Aff. ¶ 8.) Accordingly, the theory of "special circumstances" does not broaden the scope of Hersh's duty to Plaintiffs beyond that owed at the time the Investments were purchased in 2000.

## C. *STATUTE OF LIMITATIONS*

■ Under New York law, the statute of limitations for breach of fiduciary duty " 'depends on the substantive remedy which the plaintiff seeks.' " *Independent Order*, 157 F.3d at 942 (*quoting Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 519 N.Y.S.2d 801, 514 N.E.2d 113, 115 (1987)). Where a plaintiff alleging breach of fiduciary duty "seeks only money damages, courts have viewed such actions as alleging injury to property, to which a three-year statute of limitations applies." *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157, 164 (App. Div. 1st Dep't 2003) (citations and quotation marks omitted); *see also Independent Order*, 157 F.3d at 942; N.Y. C.P.L.R. § 214(4) (2007); *cf. Cooper v. Parsky*, 140 F.3d 433, 440–41 (2d Cir.1998) ("The Second Circuit has recognized that a six-year statute of limitations only controls claims for breach of fiduciary duties seeking equitable relief.").

■ The time within which an action "must be commenced . . . shall be computed from the time the cause of action accrued to the time the claim is interposed." N.Y. C.P.L.R. § 203(a) (2007). A claim for breach of fiduciary duty accrues, and the statute begins to run, upon the date of the alleged breach. *See Bastys v. Rothschild*, No. 97 Civ. 5154, 2000 WL 1810107, at *34 (S.D.N.Y. Nov. 21, 2000) ("With respect to accrual, the rule in New York is that if a breach of fiduciary duty claim is not based upon fraud, the statute of limitation begins to run upon the breach, and not when the plaintiff discovers the breach.") (citations omitted).

In the instant case, Plaintiffs seek monetary damages, therefore, the applicable statute of limitations is three years. Defendants contend that the statute of limitations started to run in June and July of 2000 when Plaintiffs purchased the Investments. Since this action was commenced in February 2006, more than five years after such purchases, Defendants assert that Plaintiffs' claim is time-barred.

■ The Court agrees with Plaintiffs that the statute of limitations may be tolled while a relationship of trust and confidence exists between the parties. *See Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir.2001). The "reason for such a tolling rule is that the beneficiary should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit." *Id.* at 519 (citations omitted).

■ Because Hersh remained as the agent of record on the Investments until 2005, Plaintiffs claim the statute of limitations was tolled until that time based on a continuing relationship of trust and confidence. The Court is not persuaded that Plaintiffs retained a continuous relationship of trust and confidence with Hersh with respect to the Investments through

2005 because: (1) the Investments were purchased in 2000; (2) Hersh lacked discretionary authority to make any changes to the Investments; (3) Plaintiffs retained control over the Investments and full responsibility for trading decisions with respect to the Annuity; (4) Plaintiffs were aware that the Annuity's value had decreased by 50 percent in 2001; (5) in 2002, Hersh told Ciccone that there was a possibility the Annuity might loose all of its value; and (6) Plaintiffs did not communicate with Hersh since in or about January or February 2002. In viewing all the facts on the record in a light most favorable to the non-moving party, even it Plaintiffs could sufficiently establish that any form of fiduciary relationship existed between the parties based on Hersh's advise and other actions pertaining to the Investments, the latest date Plaintiffs could argue that such a relationship existed would be in January or February 2002, when the parties last communicated. *See Samuels*, 77 F.3d at 35 (*citing Anderson*, 477 U.S. at 247–50, 106 S.Ct. 2505). Therefore, February 2002 is the latest date the cause of action could have accrued or the statute of limitations may have been tolled. Since this action was commenced in February 2006, more than three years after the latest date for accrual, the statute of limitations has run. Accordingly, Plaintiffs' claim is time-barred.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motions for summary judgment (Docket Nos. 46, 51 and 60) of defendants Mitchell Hersh, New England Life Insurance Company, and American Portfolios Financial Services, Inc. are GRANTED, and it is further

**ORDERED** that the complaint of plaintiffs Laurence Ciccone and Christine Ciccone is DISMISSED in its entirety.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**