**Carlos RODRIGUEZ, Plaintiff,**

v.

**CITY OF NEW YORK et al., Defendants.**

**No. 10 Civ. 2240(VM).**

United States District Court, S.D. New York.

Aug. 9, 2011.

Robert Dembia, Robert Dembia, P.C., New York, NY, for Plaintiff.

Brian Jeremy Farrar, New York City Law Department Corporation Counsel of the City of New York, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Carlos Rodriguez ("Rodriguez") brought this action pursuant to 42 U.S.C. § 1983 against defendants City of New York ("City"), New York City Department of Correction ("DOC"), DOC Captain Alleyne ("Alleyne"), DOC Officer Nieves ("Nieves"), and DOC Officer Mininni ("Mininni") (collectively, "Defendants").[1] Rodriguez asserts claims for excessive force and deliberate indifference to medical needs in violation of the Eighth Amendment to the United States Constitution. By letter-brief dated April 20, 2011, Defendants requested a pre-motion conference to address their contemplated motion for summary judgment. Rodriguez submitted a letter-brief opposing the proposed motion for summary judgment on April 22, 2011, to which Defendants replied on May 26, 2011. The Court held a conference with the parties on June 17, 2011, to discuss Defendants' contemplated motion. On that occasion, the Court indicated that it would deem Defendants' April 20 and May 26, 2011 letter-briefs as constituting a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") and afforded Rodriguez an opportunity to submit any affidavits, documents, or any other evidence he may possess to oppose the motion. Rodriguez responded by letter-brief dated July 7, 2011, attaching an affidavit from Rodriguez dated June 20, 2011 ("Rodriguez Aff."). Defendants replied by letter-brief dated July 22, 2011. For the reasons discussed below, the Defendants' motion is GRANTED.

## I. BACKGROUND[2]

This action arises out of events that occurred at George Motchan Detention Center on Rikers Island, where Rodriguez was incarcerated. On May 9, 2009, at or around 6:30 p.m., DOC Captain Flemister ("Flemister") summoned Rodriguez while he was eating dinner in the mess hall and

---

1. Rodriguez concedes that he has not established municipal liability against the City under *Monell v. Department of Social Services.* See 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rodriguez also concedes that DOC "is a non-suable entity." *Bennerson v. City of New York,* No. 03 Civ. 10182, 2004 WL 902166, at *3 (S.D.N.Y. Apr. 28, 2004). Accordingly, the Court dismisses the City and DOC from this action.

2. The summary below derives from the following submissions of Defendants and Rodriguez and any documents and exhibits attached thereto: (1) Defendants' letter-briefs dated April 20, 2011, May 26, 2011, and July 22, 2011; and (2) Rodriguez's letter-briefs dated April 22, 2011 and July 7, 2011. Except where specifically referenced, no further citation to these sources will be made.

directed him to report to the 1 Main housing area ("1 Main"), where inmates with infractions or who are about to serve time in solitary confinement are assigned. Rodriguez, although unaware of any reason for a transfer to 1 Main, reported directly to that location.

There, Alleyne, Nieves, and Mininni escorted Rodriguez to a cell in the back of one of the tiers. Rodriguez alleges that Alleyne and Nieves then attempted to push Rodriguez into a cell against his will. According to Rodriguez, Alleyne "then struck [him] several times in the face and arm. The punches were forceful and painful. [Alleyne] then put [him] in a firm, extended chokehold. [Rodriguez] believe[s] [he] lost consciousness." (Rodriguez Aff. ¶ 7.) When Rodriguez awoke, he was on a bed in a cell and felt an "extreme burning sensation in [his] throat." (Id.)

Rodriguez claims that he immediately requested medical attention for his injuries, but Alleyne simply "laughed and walked away." (Id.) Rodriguez maintains that he repeated his request that evening and during the ensuing days. Three days after the alleged incident, on May 12, 2009, Rodriguez had a medical evaluation, during which he reported the assault. At that time, Rodriguez reported that he was not experiencing any pain, although he states in his affidavit that he had suffered some pain immediately after the incident. The physician assistant who performed the examination recorded that Rodriguez had no visible injuries. Photographs taken by DOC personnel on the day of the evaluation confirm that Rodriguez had, at most, some minor swelling on the left side of his face.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). To defeat a motion for summary judgment, the non-moving party must produce more than "a scintilla of evidence" in support of its position. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### B. ANALYSIS

#### 1. Excessive Force Claim

Rodriguez alleges that Defendants' actions constituted excessive force in violation of the Eighth Amendment. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The "core judicial inquiry" of a claim of excessive force is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, —— U.S. ——, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (*quoting Hudson*, 503 U.S. at 7, 112 S.Ct. 995). This inquiry includes both a subjective and an objective component.

*United States v. Walsh,* 194 F.3d 37, 49 (2d Cir.1999).

To satisfy the objective component, an inmate must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson,* 503 U.S. at 8, 112 S.Ct. 995 (*quoting Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). However, an inmate need not allege some minimum threshold of injury, such as "serious," "significant," or "non-*de minimis,*" to bring a claim of excessive force. *See Wilkins,* 130 S.Ct. at 1179. Nevertheless, the extent of injury suffered is relevant to the Eighth Amendment inquiry insofar as it indicates the amount of force applied. *Id.*

The facts of the case at hand are nearly identical to those in *Yearwood v. LoPiccolo,* No. 95 Civ. 2544, 1998 WL 474073 (S.D.N.Y. Aug. 10, 1998). There, the plaintiff alleged that he was rendered unconscious after an officer grabbed his neck and began choking him, while another hit him on the side of his head with a pair of keys, and another punched him in the mouth. The plaintiff's medical records, however, revealed only a minor bump to the side of his head. The court found that, because the medical records strongly suggested the force used against the plaintiff was *de minimis,* the plaintiff could not meet the objective component of the excessive force standard. *See also Vatansever v. City of New York,* No. 01 Civ. 11621, 2005 WL 2396904, at *3 (S.D.N.Y. Sept. 28, 2005) (holding that absence of any reference to physical injury in plaintiff's medical records undermined plaintiff's excessive force claim), *aff'd,* 210 Fed.Appx. 26 (2d Cir.2006).

Similarly, Rodriguez alleges that Defendants rendered him unconscious after choking him and punching him in the head and arm. However, upon evaluation three days after the alleged incident, medical personnel at Rikers Island found Rodriguez had no visible injuries. This absence of injury is confirmed by photographs of Rodriguez, which show at most some minor swelling on the left side of his face. Furthermore, Rodriguez himself complained of pain only in the back of his neck, and even this pain was not present during the evaluation. Rodriguez did not contest the accuracy of the medical report nor submit any evidence to rebut its findings. Thus, as in *Yearwood,* the medical record here strongly suggests that the force used against Rodriguez was *de minimis.*

Because the Court finds that no rational jury could return a verdict for Rodriguez on the objective component of the excessive force inquiry, the Court need not assess whether Rodriguez could satisfy the subjective component. Accordingly, the Court grants Defendants' motion for summary judgment on the claim of excessive force.

2. *Deliberate Indifference Claim*

Rodriguez also claims that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Similar to a claim for excessive force, the standard for deliberate indifference includes both subjective and objective components. Defendants argue that Rodriguez cannot meet the objective standard. The Court agrees.

To prevail on a claim for deliberate indifference, an inmate must prove that, objectively, the alleged deprivation of adequate medical care was "sufficiently serious." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006) (*quoting Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The standard "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong,*

143 F.3d 698, 702 (2d Cir.1998) (*quoting Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994)). When the basis for an inmate's claim of deliberate indifference is a temporary delay or interruption in the provision of otherwise adequate medical treatment, the relevant concern is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir.2003); *see also Salahuddin*, 467 F.3d at 280. "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187.

■ Here, neither Rodriguez's own description nor that in the medical record suggests that Rodriguez's physical condition after the alleged incident required urgent care. At worst, Rodriguez displayed some minor swelling on the left side of his face, for which he was prescribed ibuprofen. Furthermore, Rodriguez presents no evidence that his condition worsened as a result of the three-day delay between his request and receipt of medical attention. To the contrary, after three days, Rodriguez had no visible injuries. Given the lack of evidence to support the claim that the alleged deprivation was "sufficiently serious," the Court concludes that Rodriguez cannot meet the objective standard of deliberate indifference as a matter of law and, accordingly, grants Defendants' motion for summary judgment on this claim.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment that the Court has deemed contained in the letter-briefs dated April 20, 2011 (Docket No. 23) and May 26, 2011 (Docket No. 25) submitted by defendants City of New York, New York City Department of Correction ("DOC"), DOC Captain Alleyne, DOC Officer Nieves, and DOC Officer Mininni is GRANTED.

The Clerk of the Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**