152 F.3d 77
 Howard AYERS, Plaintiff-Appellant,
v.
D. RYAN, Lt. Hearing Officer, Southport Correctional
Facility and R.J. McClellan, Superintendent, Southport
Correctional Facility, both above in their individual and
official capacities, Defendants-Appellees.
 No. 1717, Docket 96-2996.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1998.
Decided July 28, 1998.
 
 C. Ian Anderson, New York City (Ogden N. Lewis, Karen E. Wagner, Davis Polk & Wardwell, of counsel), for Plaintiff-Appellant.
 Patrick Barnett Mulligan, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York, Nancy A. Spiegel, Lisa LeCours, Assistant Attorneys General, of counsel), for Defendants-Appellees.
 Before: WINTER, Chief Judge, JACOBS, Circuit Judge, and CARMAN, Chief Judge.*
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff Howard Ayers, an inmate in the custody of the New York State Department of Correctional Services, filed suit under 42 U.S.C. § 1983, alleging that his right to due process was violated when he was sentenced to confinement in the Special Housing Unit ("SHU") without receiving assistance in preparing for his defense or being afforded an opportunity to call certain witnesses at his Tier III disciplinary hearing. Ayers appeals from a judgment of the United States District Court for the Western District of New York (Telesca, J.), dismissing the complaint on the grounds that (i) the two defendants (the hearing officer and the prison superintendent) are immune from suit under the doctrine of qualified immunity; (ii) the conduct of the disciplinary hearing did not violate plaintiff's right to due process; and (iii) plaintiff's motion for appointment of counsel was moot. The district court assumed without deciding that plaintiff's 180-day confinement in the SHU at Southport Correctional Facility implicated a protected liberty interest under Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[1]
 
 
 2
 We vacate the judgment because the district court erred in concluding as a matter of law that there were no due process violations and in finding that the hearing officer was entitled to qualified immunity, and we remand for further proceedings, including a Sandin analysis.
 
 Background
 
 3
 Plaintiff Howard Ayers was an inmate at the Auburn Correctional Facility when he was served with a misbehavior report that charged him with making a statement in violation of a New York State Prison Regulation, 7 N.Y.C.R.R. 270.2(B)(5)(iii) Rule 104.12, which provides that inmates "shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." In the misbehavior report, Officer Alan Secaur stated that, while making rounds on a catwalk near Ayers' cell, he overheard Ayers make the following statements about the prison's double-bunking policy:
 
 
 4
 Until we get the guidelines about T.B. an[d] [AIDS] we have to stand firm Joey. I want to do right for the guys in here for another 15 to 20 years. I am on my way out. Carmell ain't going no where he is a sneaky bastard. Tony didn't want to get moved but he did. What's Strap doing here he don't know what the fucks going on, he's just trying to smooth things over. The bottom line is I'm not going for double bunking. Alot [sic] of Dudes won't retalliate [sic], the issue is we ain't coming out. If they keeplock us they have to feed us, their [sic] not going to do that, you know Joey....
 
 
 5
 A few days after receiving this misbehavior report, Ayers was transferred to the Southport Correctional Facility ("Southport"). At Southport, Ayers completed a Tier III Assistance Form on which he listed three Southport employees as possible assistants to aid him in preparing for his disciplinary hearing. None of those employees were available to act as assistants, and Ayers did not select three others.
 
 
 6
 The disciplinary hearing began on June 30, 1995, with defendant Dennis Ryan as the designated hearing officer. At the outset, Ryan offered to assist Ayers in preparing his case rather than have Ayers look for another assistant:
 
 
 7
 RYAN: What I'm going to do, Ayers, is with you[r] approval only, if I as Hearing Officer assist you in getting you what you want, with out [sic] going through an assistant, I will do so....
 
 Ayers accepted:
 
 8
 RYAN: I want to find out first of all whether you want me to help you as far as getting the witnesses or do you want me to stop the Hearing for you to be properly assisted with an assistant.
 
 
 9
 AYERS: Like I said earlier, that ... if you could assist me, than [sic] assistance is assistance.
 
 
 10
 Ayers then gave Ryan a sheet he had prepared that listed the witnesses and documents he needed to prepare his defense. Ayers and Ryan discussed the contents of the sheet in some detail. During that discussion, Ayers denied making the alleged seditious remarks and said he wanted to find out who did. Among the witnesses on Ayers' list were (i) Officer Secaur, (ii) an inmate named "Jackson," and (iii) another inmate whose name Ayers did not know but whom Ayers identified by his cell number at Auburn, "E-8-23." Ayers indicated that Jackson was then being held at Southport, apparently also having been transferred from Auburn. Ryan undertook to find Jackson at Southport and tape his testimony for use at the hearing; to try to find E-8-23, noting that he should still be able ascertain the inmate's location even though he "might not still be there" at the Auburn facility; and to get the taped testimony of Officer Secaur. Ryan took possession of the sheet Ayers had prepared, and promised to return it. The hearing was adjourned to allow Ryan to locate the documents and contact the witnesses Ayers requested.
 
 
 11
 When the hearing reconvened on July 24, Ryan apologized for having failed to do any of the things he agreed to do. Ryan explained that he "got busy doing Hearings and stuff and [he] didn't do it." Nonetheless, Ryan proceeded with the hearing, during which Officer Secaur and another officer at Auburn were interviewed. Officer Secaur essentially confirmed his report.
 
 
 12
 Ryan then explained to Ayers that in order to prove he did not make the statements alleged, Ayers would need to produce a witness to contradict Officer Secaur's testimony and written report:
 
 
 13
 RYAN: [W]e've already got Officer [Secaur], who wrote the report, what I need is somebody who can give me relevant testimony that you didn't say that, that some other inmate said that....
 
 
 14
 AYERS: Well I don't know of anybody who can--all I know is that I didn't--that's not me talking on that report. And I don't know of anyone who can.
 
 
 15
 RYAN: I'm trying to give you every opportunity to prove your innocence.
 
 
 16
 AYERS: ... I don't know of anyone then, I don't know of anyone who can--who would state that they didn't see me--hear me talking or somethin[g] like that.
 
 
 17
 Ryan then gave Ayers an opportunity to state his objections on the record, at which time Ayers complained that he was denied adequate assistance in preparing his defense.
 
 
 18
 Ryan found Ayers guilty of the misconduct charged in the report and imposed a penalty that included 240 days in the SHU and loss of privileges. Ayers appealed that penalty to the State Department of Correctional Services, which reduced the sentence to 180 days in the SHU.
 
 
 19
 Several months later, Ayers filed his § 1983 pro se complaint, alleging that his due process rights were violated (i) by Ryan's failure to assist him in preparing his defense, and (ii) by a procedurally flawed Tier III hearing. As defendants, Ayers named both Ryan and R.J. McClellan, the Superintendent of Southport. Ayers also applied for appointment of counsel, which the court denied on the ground that Ayers' complaint had not yet withstood a motion to dismiss on the merits. After document requests were served and answered, Ayers moved for summary judgment; the defendants cross-moved for summary judgment; and Ayers made a second application for appointment of counsel.
 
 
 20
 The district court granted defendants' summary judgment motion and dismissed the complaint. First, it found that Ryan was immune from suit because Ayers was unable to show "that Ryan's refusal to call certain witnesses was a clearly established violation of the Due Process Clause." The court then went on to find that:
 
 
 21
 Even if [Ryan] were not immune from suit under the doctrine of qualified immunity and plaintiff possessed a liberty interest protected by the United States Constitution, the record demonstrates that the conduct of the hearing did not violate plaintiff's due process rights.
 
 
 22
 Explaining that a hearing officer may refuse to call witnesses if the hearing officer determines their testimony is irrelevant or unnecessary, the court found that Ryan properly determined that a number of Ayers' witnesses were either non-existent or irrelevant to the hearing. Specifically with regard to Jackson and E-8-23, the court remarked:
 
 
 23
 Although Ryan failed to investigate two of the eight named witnesses, inmate Jackson and the inmate housed in E-8-23, I find that Ryan reasonably determined that their testimony was irrelevant. At the conclusion of the hearing, Ayers confirmed that he had no relevant witnesses when he stated that he had no witnesses who could testify that he did not make the statement for which he was charged.
 
 
 24
 The district court also concluded that defendant McClellan, the Superintendent at Southport, was entitled to qualified immunity because Ayers presented no evidence that McClellan had any personal involvement in the violation of Ayers' due process rights (a ruling that is not challenged on appeal). Finally, the court denied Ayers' renewed application for appointment of counsel as moot. Ayers appeals.
 
 Discussion
 
 25
 This Court reviews de novo a district court's grant of summary judgment. Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir.1996) (per curiam ). "Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Id.
 
 
 26
 1. Ayers' Alleged Due Process Violations.
 
 
 27
 On appeal, Ayers asserts that summary judgment was improper because Ryan violated due process in two respects: (a) by failing to provide any assistance in preparing Ayers' defense, and (b) by failing to call Jackson and E-8-23 as witnesses. We agree, and therefore vacate.
 
 
 28
 (a) The Right to Assistance. In Eng v. Coughlin, 858 F.2d 889 (2d Cir.1988), we decided that a prisoner who has been transferred between facilities has a right to substantive assistance in preparing a defense. Like Ayers, the inmate in Eng was charged with misbehavior, transferred to another prison, and deprived of any assistance in preparing his defense. Id. at 891-92. Although we upheld the dismissal of the complaint on the ground of qualified immunity because at the time an inmate had no clearly established constitutional right to assistance, we warned:[F]or inmates disabled by confinement in SHU, or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment. Further, the assistance must be provided in good faith and in the best interests of the inmate.
 
 
 29
 Id. at 898 (citation omitted). We therefore held that in the future "an assigned assistant who does nothing to assist a disabled prisoner ... has failed to accord the prisoner his limited constitutional due process right of assistance." Id.
 
 
 30
 In light of Eng, it is clear enough that Ryan violated Ayers' due process rights by undertaking to act as Ayers' assistant and then doing nothing to assist. Notwithstanding Ryan's repeated undertakings, Ryan admits (in his Amended Answer) that "as of the commencement of the hearing on July 14, 1995, he hadn't returned plaintiff's handwritten list, hadn't interviewed plaintiff's witnesses, nor had he received any of plaintiff's requested documents." This failure of assistance is just the sort that we found to violate an inmate's limited due process rights in Eng. However odd or irregular it may be for the hearing officer to offer his services as the assistant, and for Ayers to accept them, we reject Ryan's argument that Ayers waived his right to pre-hearing assistance when he agreed to have Ryan help him instead of a properly appointed assistant.
 
 
 31
 (b) The Right to Summon Witnesses. In Fox v. Coughlin, 893 F.2d 475 (2d Cir.1990) (per curiam ), we held that prison authorities may not refuse to interview an inmate's requested witnesses "without assigning a valid reason." Id. at 478. The inmate in Fox asked his hearing officer to interview seven witnesses who had been present when the inmate allegedly pushed an officer. The hearing officer interviewed five of the witnesses, but declined to interview the two others because he believed that their testimony would be "redundant." Id. at 477. We concluded that, when an official refuses to conduct an interview, "[t]he burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position." Id. at 478. We rejected the hearing officer's proffered reasons for refusing to interview the witnesses, noting that he "had no reason to believe that the testimony of the two [witnesses] would be redundant." Id.
 
 
 32
 It is clear that Ryan also violated Ayers' due process rights by failing (without rational explanation) to obtain the testimony of the witnesses requested by Ayers during the disciplinary hearing. In his response to Ayers' interrogatories, Ryan stated that "[i]nmate Jackson was not called as a witness at the July 24, 1995 hearing as a result of an apparent oversight on my part" and that Ryan was "not aware of whether inmate Jackson was available or if his testimony was relevant." Similarly, Ryan conceded that "as a result of an oversight on my part I am not aware of whether inmate E-8-23 was available or if his testimony was relevant." These statements fail to satisfy even the small burden imposed on the hearing officer in Fox to give a valid reason for failing to interview a witness. Moreover, they undermine the district court's conclusion that "Ryan reasonably determined" that Jackson's and E-8-23's testimony was irrelevant.
 
 
 33
 On appeal, Ryan contends that he was justified in not interviewing Jackson and E-8-23 because Ayers conceded at the end of the hearing that he knew of no witnesses who could help him. Ryan cites the exchange in which Ryan told Ayers he needed to come forward with something to contradict Officer Secaur's testimony, and Ayers responded, "I don't know of anyone who can--who would state that they didn't see me--hear me talking or somethin[g] like that." Ryan construes this as Ayers' acknowledgment that there were "no witnesses who could offer that kind of testimony."
 
 
 34
 We disagree. Ayers did not say that there were no other witnesses whose testimony would support his defense; Ayers said that he did not know of any witnesses who could offer such testimony, a disclaimer consistent with the view that Ayers did not know because Ryan failed to find out, and with Ayers' objection at the conclusion of the hearing that he had not been able to marshal the facts or prepare a foundation for his defense because he was not properly assisted, and because Ryan failed to fulfill any of the requests on his handwritten sheet.
 
 
 35
 This case is therefore easily distinguished from Bedoya v. Coughlin, 91 F.3d 349 (2d Cir.1996), in which the inmate waived his right to have a witness testify at a disciplinary hearing "by failing either to reiterate his request for [the] testimony when given the opportunity or to object to the close of the hearing." Id. at 352. Ayers clearly objected to Ryan's failure to fulfill the requests on Ayers' handwritten sheet, which included his request to obtain the testimony of both Jackson and E-8-23, and waived nothing.
 
 
 36
 2. Qualified Immunity.
 
 
 37
 Qualified immunity shields government officials from liability for damages resulting from the performance of discretionary official functions if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir.1995) (internal quotation marks omitted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Summary judgment may be granted on this ground if the defendant shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it. Id. at 475. To win summary judgment on the latter ground, the official "must produce such uncontroverted facts that a jury--drawing all inferences favorable to plaintiff--would have to conclude it was objectively reasonable for defendant to believe his actions did not violate an established federally protected right." Id.
 
 
 38
 The district court concluded that Ryan was entitled to qualified immunity because Ayers could not "demonstrate that Ryan's refusal to call certain witnesses was a clearly established violation of the Due Process Clause." The court explained:
 
 
 39
 Ryan followed the statutory requirements in holding the disciplinary hearing. He considered and ruled upon plaintiff's requests for witnesses and documents. Accordingly, Ryan did not violate a clearly established statutory or constitutional right of the plaintiff. In the absence of a clearly defined constitutional right, Ryan could have reasonably believed in these circumstances that plaintiff's rights were not violated by denying him certain witnesses and documents.
 
 
 40
 On appeal, Ayers argues that Ryan does not enjoy qualified immunity. We agree. This Court's decision in Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir.1988), clarified for "future cases" that an inmate transferred between facilities has the right to good faith assistance, and that "an assigned assistant who does nothing" violates due process. Similarly, Fox v. Coughlin, 893 F.2d 475, 478 (2d Cir.1990) (per curiam ), established that a hearing officer must give a valid reason for failing to call a witness requested by an inmate. The contours of Ayers' due process rights were therefore well defined by the caselaw of this Circuit by the time Ryan conducted Ayers' disciplinary hearing in 1995.
 
 
 41
 We see no facts from which a jury would be compelled to conclude it was objectively reasonable for Ryan to believe his actions did not violate Ayers' due process rights. See Rodriguez, 66 F.3d at 475. Contrary to Ryan's arguments on appeal, Ayers did not "waive" his right to pre-hearing assistance by agreeing to have Ryan act as his assistant, or "ultimately acknowledge[ ] that [the] witnesses that were not called could not offer relevant testimony." Ryan's arguments are aggressive characterizations of evidence that is ambiguous at best; the evidence certainly does not compel the conclusion that Ryan's conduct was objectively reasonable.
 
 
 42
 Therefore, because Ryan violated Ayers' clearly established constitutional rights, and because no evidence compels the conclusion that it was objectively reasonable for Ryan to believe that his actions did not violate those rights, the district court erred in granting summary judgment on the issue of qualified immunity.
 
 
 43
 3. Sandin Analysis.
 
 
 44
 As noted above, the district court assumed the existence of a protected liberty interest for the purpose of summary judgment, and thus made no factual findings as to whether Ayers' 180-day confinement in the SHU was an "atypical and significant hardship" under Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry that a district court is in a superior position to make in the first instance. In Samuels v. Mockry, 77 F.3d 34 (2d Cir.1996) (per curiam ), we declined to make such a determination, noting that "[a]n assessment as to whether an inmate has a protected liberty interest under Sandin ... may require fact finding that the district court had no opportunity to do and that we are not in a position to undertake." Id. at 38; see also Miller v. Selsky, 111 F.3d 7, 9 (2d Cir.1997). Accordingly, we remand this case for further proceedings--including fact-finding under Sandin.
 
 
 45
 4. Ayers' Request for Appointment of Counsel.
 
 
 46
 In denying Ayers' first application for appointment of counsel, the district court erroneously relied upon the fact that Ayers' allegations had not yet withstood a motion to dismiss. See Hendricks v. Coughlin, 114 F.3d 390, 393 (2d Cir.1997) (holding that automatic denial of inmate's request for counsel on the ground that claim had not yet withstood a motion to dismiss was abuse of discretion). Ayers subsequently made another application for appointment of counsel, which the court denied as moot after it granted defendants' motion for summary judgment.
 
 
 47
 On appeal, Ayers argues that the district court erred in denying his requests for counsel, and that, on remand, he should be afforded the opportunity to have his application considered under the correct standard. In support of this request, Ayers points out that he satisfies a number of the factors recognized as relevant in Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir.1986), including (i) that his position is likely to be of substance, (ii) that he has an inability to investigate crucial facts, and (iii) that, on remand, the Sandin analysis will involve complex legal issues.
 
 
 48
 Ryan concedes that the district court erred by applying an improper standard to Ayers' first request for appointed counsel. See Hendricks, 114 F.3d at 393. However, Ryan asserts that the district court "undertook the proper analysis with respect to plaintiff's second motion for appointment of counsel" and should therefore be affirmed. That cannot, however, be the case because the district court denied Ayers' renewed request as moot (without consideration of its merits) after granting summary judgment to Ryan.
 
 
 49
 On remand, the district court must therefore reconsider Ayers' request for counsel in light of the Hodge factors.
 
 Conclusion
 
 50
 The judgment of the district court is vacated, and the case is remanded for further proceedings, including a preliminary determination as to whether plaintiff's confinement in the SHU implicated a protected liberty interest under Sandin.
 
 
 
 *
 Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The record strongly suggests but does not positively show that Ayers served the 180-day sentence in the SHU