Clifton CRAWFORD, Plaintiff,

v.

Thomas A. COUGHLIN, Walter R. Kelly, Terry Myers, Everett Snyder, Thomas Kiakowski, John Conroy, and Phillip Maurer, Defendants.

No. 94–CV–494 H.

United States District Court, W.D. New York.

Feb. 9, 1999.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties in the above captioned matter consent to have the undersigned conduct any and all proceedings including the entry of final judgment (Item 16).

Plaintiff commenced this action seeking monetary damages for being exposed to a future risk of harm because he was allegedly exposed to dangerous chemicals while employed in the Corcraft metal shop at the Attica Correctional Facility (Items 1, 4, 19). Defendants move for summary judgment claiming that the complaint against defendants Coughlin, Kelly, Conroy, and Maurer should be dismissed for lack of personal involvement, that all defendants are entitled to qualified immunity, and that plaintiff's claims prior to July 6, 1991, are barred by the statute of limitations (Item 44).

For the reasons set forth below, defendants' motion for summary judgment is

granted as to defendants Coughlin, Kelly, Conroy and Maurer. Defendants' motion for summary judgment based on the qualified immunity defense is denied. In addition, I find that plaintiff's claims are not time barred by the statute of limitations.

## BACKGROUND

At the time of the events giving rise to this claim, plaintiff was an inmate incarcerated at the Attica Correctional Facility ("Attica").[1] Defendant Thomas Coughlin was the Commissioner of the Department of Correctional Services. Walter R. Kelly was the Superintendent of Attica. Terry Myers was the head supervisor of Corcraft at Attica.[2] Everett Snyder is the metal shop supervisor during the 7:30 AM to the 2:30 PM shift. Thomas Kiakowski was plaintiff's supervisor of the paintline from the 7:30 AM to the 2:30 PM shift.[3] John Conroy was the Director of Corrections Industries. Phillip Maurer was the quality control supervisor in the metal shop.

On July 26, 1989, plaintiff was assigned to the Metal Shop at the Corcraft facility at Attica (Item 45, ¶ 1; Item 60, ¶ 2). Plaintiff worked as a file cabinet assembler from July 31, 1989, through December 8, 1989 (Item 45, ¶ 2). Plaintiff worked as a spray painter from December 11, 1989 through February 4, 1990 (Item 45, ¶ 3). From February 5, 1990, through February 25, 1990, plaintiff worked as a welder/mic general metal finisher in the file cabinet department (Item 45, ¶ 4). Plaintiff worked as a lineman from February 26, 1990, through April 27, 1990, hanging or removing parts from the file cabinet paint line conveyor system (Item 45, ¶ 5). From April 30, 1990, through September 28, 1990, plaintiff was a phosphitizer operator (Item 45, ¶ 6). Finally, from October 1, 1990, through November 18, 1991, plaintiff worked as a spray painter (Item 45, ¶ 7).

Defendants claim that plaintiff did not handle, mix or spray paint, and was not exposed to any paint fumes, except when he worked as a spray painter (Item 45, ¶¶ 2–7).

Plaintiff attended a three day orientation session conducted by prison officials prior to starting work in the metal shop. According to defendants, plaintiff was instructed in all metal shop safety procedures and practices, and he was instructed to wear his paint spray respirator and use other safety devices while working with paint (Item 45, ¶¶ 9–10). Plaintiff contends that the safety instruction focused solely on the proper handling of tools and machines (Item 60, ¶ 3). He claims there was no instruction related to the handling of toxic substances or the wearing of safety equipment (Item 60, ¶ 4). While plaintiff was provided with an orientation sheet that focused on policies and practices, it did not provide any information about the presence or use of toxic substances (Item 60, ¶ 5).

According to defendants, when plaintiff was employed in the metal shop he was assigned full-length coveralls, earplugs, safety glasses, safety goggles, work gloves, work boots, a skull cap and a "state-of-the-art" paint spray respirator manufactured by 3–M (Item 45, ¶ 8). Plaintiff admits that he was intermittently provided with some safety equipment: paper dust masks and safety goggles (Item 60, ¶¶ 7–10). However, plaintiff alleges that the supply of dust masks ran out and were never replaced, and the goggles were only supplied intermittently (Item 60, ¶¶ 7–8). He also claims that he was never supplied with work gloves, and that he wore the same clothes to work that he wore in the general population (Item 60, ¶¶ 9–10; see also Item 61 (affidavit of Joe Stanford)).

---

1. On November 22, 1991, plaintiff was transferred to the Greenhaven Correctional Facility.

2. The correct spelling of defendant Myers name is Meyers (See Item 6).

3. The correct spelling of defendant Kiakowski's name is Krakowski (See Item 17).

The crux of plaintiff's argument is that defendants exposed him to a chemical or chemicals that could cause cancer and, if inhaled, could affect the brain or nervous system, causing dizziness, headaches, nausea, and nose, throat, eye and skin irritation (Item 19, at 1). Plaintiff further alleges that he was never informed that he was working with a carcinogen, and that he was not provided with appropriate clothing or safety devices (Item 19, at 2).[4] According to defendants, plaintiff was advised that Material Safety Data Sheets for all products used at Corcraft were available for his review, and that the paint containers had warning labels which provided proper health and handling information (Item 45, ¶¶ 10–11).

Defendants filed a motion for summary judgment on May 1, 1998 (Item 44). Three arguments are made in support of defendants' motion. First, defendants argue that the claims against defendants Thomas A. Coughlin, Walter R. Kelly, John Conroy and Phillip Maurer should be dismissed for lack of personal involvement. Second, defendants contend that the complaint should be dismissed on the grounds of qualified immunity. Third, defendants assert that any claims made by plaintiff based on events occurring before July 6, 1991, are time-barred by a three-year statute of limitations.

Plaintiff responds that material issues of fact exist, justifying denial of defendants' motion for summary judgment (*See* Item 55).

### DISCUSSION

#### A. *Lack of Personal Involvement.*

■ The first issue presented in defendants' motion is whether a state employee can be held liable under 42 U.S.C. § 1983 if the employee was not personally involved in the violation of plaintiff's rights. Personal involvement of a defendant is a

prerequisite to an award of damages under § 1983. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977); *see Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991).

■ There are several ways in which supervisory officials can be held liable. The official can directly participate in the infraction. *Williams*, 781 F.2d at 323. The official can fail to remedy a violation after learning of it through a report or appeal. *Id.* The official can create a policy or custom which allows unconstitutional practices to occur, or allowing such a policy or practice to continue. *Id.* Finally, the official can manage the subordinates who caused the unlawful event or condition in a grossly negligent manner. *Id.* at 323–24; *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir.1998) (noting that the Second Circuit "has long recognized that supervisors may be 'personally involved' in the constitutional torts of their supervisees"). Absent any personal involvement, defendants Coughlin, Kelly, Conroy and Maurer cannot be held personally liable. *McKinnon*, 568 F.2d at 934.

■ Plaintiff alleges that defendant Coughlin is liable because he is the commissioner of corrections, he has authority over other officials at the correctional facility, and that he is empowered to create rules and regulations regarding the facility (Item 19, at 1). Plaintiff contends that defendant Kelly is liable because he is the superintendent of Attica Correctional Facility and because "[i]t is his job as superintendent to see that all safe[ty] procedur[es] are taken while working in the metal shop of Corcraft" (Item 19, at 1). Plaintiff further notes that Defendant Kelly's position requires him to monitor employee infractions of the facility's rules and regulations (Item 19, at 2). According to plaintiff, defendant Conroy's liability is

---

4. No number is provided for page one of plaintiff's amended complaint. Page two is actually numbered as page one, page three is

numbered page two, etc. References to pages in the amended complaint refer to the actual page in the document (*See* Item 19).

based on his position as director of Correction Industries (Item 19, at 4). Plaintiff also asserts that defendant Maurer's position as quality control supervisor makes him liable under the belief that he is responsible for reporting all violations of safety procedures (Item 19 at 4).

Nothing in plaintiff's allegations demonstrate that defendant Coughlin is personally liable. Clearly, defendant Coughlin is not personally involved in the events which lead to this cause of action. *Williams,* 781 F.2d at 323. Furthermore, plaintiff has not alleged that defendant Coughlin failed to take action after learning of a violation to plaintiff's rights, nor has plaintiff demonstrated that he has created a policy or custom which allowed an unconstitutional practice to occur or continue. *Id.* Finally, there is nothing in the facts of this case to demonstrate that defendant Coughlin was grossly negligent in managing his subordinates. *See id.* at 323–324.

■ Furthermore, liability against defendant Coughlin cannot be based upon a theory of *respondeat superior.* The theory of *respondeat superior* is inapplicable to § 1983 claims when an individual has not shown personal liability. *See Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973).

■ As to defendant Maurer, plaintiff alleges that he was responsible for reporting violations of safety procedures. However, defendants have shown that Maurer's duties were unrelated to Corcraft's safety procedures (Item 50, ¶ 4). Maurer was responsible for ensuring that Corcraft's products met standards of quality and workmanship (Item 50, ¶ 4). Accordingly, summary judgment should be granted as to defendant Maurer.

■ As to defendant Kelly, plaintiff alleges that Kelly is the superintendent and is responsible for ensuring that all safety requirements are met. However, plaintiff has made no showing that Kelly was directly involved, that he failed to remedy a violation of plaintiff's constitutional rights, that he created an unconstitutional policy, or that he was grossly negligent in supervising his subordinates. *Williams,* 781 F.2d at 322-24. In fact, plaintiff's papers opposing defendants' summary judgment motion do not even address this argument. Notably, plaintiff was represented by counsel on this motion, and had ample opportunity to discover relevant facts to the contrary. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998).

■ Finally, plaintiff alleges that defendant Conroy is director of Corrections Industries. Again, plaintiff's papers make no showing of his personal involvement in any of the areas outlined above. Accordingly, defendants' motion should be granted as to defendants Kelly, Conroy, Coughlin and Maurer.

## B. *Qualified Immunity.*

■ Defendants also argue that they are entitled to qualified immunity (Item 48, at 5). This claim was previously rejected in this court's Decision and Order dated April 26, 1996, based on defendants's failure to meet their burden of proof on the affirmative defense (Item 30, at 7–9). *Crawford v. Coughlin,* 1996 WL 227864, at *3 (W.D.N.Y. April 26, 1996). Defendants' current motion greatly expands the qualified immunity argument, but nevertheless fails due to factual issues as to whether safety equipment was in fact provided to plaintiff.

■ The doctrine of qualified immunity protects officials from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). The first step when analyzing the affirmative defense of qualified im-

munity in a § 1983 claim, "is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis,* 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043, 1054 n. 5 (1998); *see Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (noting that analysis of a § 1983 claim "begins by identifying the specific constitutional right allegedly infringed"). As I indicated in the April 26, 1996, order, plaintiff makes an Eighth Amendment claim based on the threat of future harm caused by his exposure to toxic substances while working in the Corcraft plant (Item 30, at 4–6). *Crawford,* 1996 WL 227864, at *2–3, *see also Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *LaBounty v. Coughlin,* 137 F.3d 68, 72–73 (2d Cir.1998).

▮▮▮▮ Plaintiff must satisfy the "deliberate indifference standard" in order to establish that his Eighth Amendment right has been violated. *Helling,* 509 U.S. at 31–35, 113 S.Ct. 2475; *see Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). This is done through a two part test. The objective part of the test requires plaintiff to show that the alleged deprivation is "sufficiently serious." *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321; *Rivera v. Senkowski,* 62 F.3d 80, 84 (2d Cir.1995). Plaintiff does this by showing that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

According to defendants, plaintiff fails to meet the objective criteria because he is no longer working in the hazardous environment and, at present, shows no physical injury or illness (Item 62, at 4–7). The injury alleged by plaintiff is the risk of future illness due to his exposure to toxins while working in the paint shop. In *Helling,* the Supreme Court clearly stated out that an inmate can grieve a future injury that arose from a present condition. *See* 509 U.S. at 33, 113 S.Ct. 2475. For exam-

ple, the Court believed it possible for an inmate to complain about unsafe drinking water without experiencing dysentery. *Id.* In the same light, the Court believed it possible for an inmate to grieve an exposure to a serious communicable disease even though the inmate shows no serious current symptoms. *Id.* Plaintiff's claim is similar to Justice White's second example.

▮▮▮▮ Plaintiff must also show that the defendants had a "sufficiently culpable state of mind." *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). In order to be found liable, prison officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

Defendants argue that they "acted on the objectively reasonable good-faith belief that proper and sufficient safety precautions and practices were followed to provide plaintiff with maximum protection from any chemical agents used in the Corcraft paint shop" (Item 48, at 7). According to the affidavits of defendants Kiakowski, Maurer, Meyers, and Snyder, plaintiff "was provided with the following safety equipment: full-length coveralls, earplugs, safety glasses, safety goggles, work gloves, work boots, a skull cap and a Model No. 8709 paint spray respirator manufactured by 3–M" (Item 47, ¶ 6; Item 50, ¶ 5; Item 49, ¶ 10; Item 46, ¶ 10). Each affidavit also states that the equipment is considered state of the art, meeting all applicable regulations regarding workplace safety. Defendant Meyers attests that during safety training "plaintiff was instructed to wear his paint spray respirator and use the other safety devices at all times during which he was working with paint" (Item 49 ¶ 12).

Plaintiff alleges that he was never provided any safety equipment, and that during his Corcraft orientation session he never received any safety instruction pertaining to toxic substances (*See* item 27 (affidavit of Clifton Crawford); Item 60, ¶ 5). Plaintiff alleged that his instructors at the orientation session referred to instructions posted on a wall, but these instructions did not mention or refer to toxins (Item 60, ¶ 7). Two other inmates who also worked at Corcraft, Joe Stanford and Lynwood Johnson, also submitted affidavits attesting to the lack of safety equipment and lack of information pertaining to the presence and use of toxic substances (*See* item 27).

■■■ Plaintiff has shown that there are material issues of fact in dispute as to whether he was given safety equipment. The question then remains whether prison officials are entitled to qualified immunity if plaintiff was not provided with safety equipment to protect him from paint fumes.

■■■ Government officials are provided qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also La-Bounty*, 137 F.3d at 73; *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir.1995); *Crawford*, 1996 WL 227864, at *3–4. Summary judgment may be granted on the grounds of qualified immunity "if the defendant shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it." *Ayers v. Ryan*, 152 F.3d 77, 82 (2d Cir.1998); *Rodriguez*, 66 F.3d at 475. Defendants "must produce enough uncontroverted facts that a jury, drawing all inferences favorable to the plaintiff, would have to conclude it was objectively reasonable for defendant[s] to believe [their] actions did not violate an established federal-

ly protected right." *Ayers*, 152 F.3d at 82; *Rodriguez*, 66 F.3d at 475.

As previously held, plaintiff has shown that he had a clearly established constitutionally right to be protected from future harm (Item 30, at 4–6). *Crawford*, 1996 WL 227864, at *2–3. While defendants have shown that they believed their actions did not violate plaintiff's rights, there is still the factual issue whether plaintiff was provided safety equipment. Drawing all inferences favorable to the defendant, a jury could conclude that officials did violate plaintiff's rights.

Accordingly, defendants motion for summary judgment on the grounds of qualified immunity is denied.

### C. *Statute of Limitations.*

■■■ Finally, defendants' argue that all claims prior to July 6, 1991, are time-barred by the three year statute of limitations (Item 48 at 9). Claims under § 1983 are properly characterized as personal injury claims for the purpose of identifying the appropriate statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 279, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). When Congress has not established a time limitation for a federal cause of action, it is proper to use an appropriate state statute of limitations. *Id.* at 266, 105 S.Ct. 1938. The appropriate time limitation for a personal injury claim in New York is three years. N.Y.C.P.L.R. 214(5). However, the Second Circuit directs that the "choice of statute of limitations from New York law be expansive enough to accommodate the diverse personal injury torts that section 1983 has come to embrace so as not to exclude claims that stray from a precisely drawn analogy." *Okure v. Owens*, 816 F.2d 45, 48 (2d Cir.1987). Allowing time to accrue from the date of discovery "ensur[es] that the borrowed period of limitations [does] not discriminate against the federal claim." *Id.* Therefore, the appropriate statute of limitations to apply is three years from discovery of exposure to the toxic substance instead of three years

from actual exposure. Accordingly, plaintiff's claims is not time barred by the statute of limitations. N.Y.C.P.L.R. 214–c.

### CONCLUSION

For the reasons set forth above, defendants' motion (**Item 44**) is granted in part and denied in part. Summary judgment is granted in favor of defendants Coughlin, Kelly, Conroy and Maurer. Still remaining are plaintiff's claims against defendants Myers, Snyder and Kiakowski.

Pursuant to the court's order of August 26, 1998 (Item 54), and with the court's appreciation, Mr. Neal Murphy is hereby relieved of his representation of the plaintiff (**Item 51**).

Finally, pursuant to FED.R.CIV.P. Rule 16, a pretrial conference will be held by telephone on **March 22, 1999**, at **10:00 AM.** At the conclusion of the conference, a trial date will be set before the undersigned and a scheduling order will be entered in accordance with Rule 16(b).

At the conference, the parties will be expected to discuss all pretrial matters referred to in Rule 16(a), (b), (c) and (e) of the Federal Rules of Civil Procedure, and Local Rule 16.1. In particular, the parties will be expected to discuss the possibility of an early settlement of the action without the necessity of further proceedings. The parties will also inform the court as to the status of all discovery which has been either competed or scheduled as of the date of the conference.

The Attorney General should contact the Greenhaven Correctional Facility and arrange for the plaintiff to have access to a telephone at that time. The Attorney General should contact the Magistrate's Chambers **prior** to the conference with the telephone number and extension of the Plaintiff. **The court will initiate the call.** It is requested that the Plaintiff be given permission to have his legal papers relative to this action available at the time of the conference call. Defendants' counsel need not appear personally, but can participate by telephone from his or her office.

If any party believes that further discovery and/or settlement conferences would serve any useful purpose, the party should advise my office and one will be promptly scheduled.

Plaintiff should note that failure to respond to this order or to otherwise comply with the Federal Rules of Civil Procedure or any other order of this court may result in a dismissal of this action on the merits. It is the plaintiff's responsibility to keep the court informed of his/her current address.

**SO ORDERED.**