**James MAHONEY, as Director of the Transport Workers Union Local 100 Retirees' Association, and Plan Administrator of the Transport Workers Union Local 100 Retirees' Association Benefit Plan, Joseph Allman, Bernard Beaver, Frank Ingram, Laverne Stuckey, Maurice Schierman, and Matthew Tarnowski, Plaintiffs,**

**v.**

**J.J. WEISER & COMPANY, INC., Sanford J. Cohen, Harvey T. Gluck, Michael J. Fitzpatrick and John Meeham, Defendants.**

**No. 04 Civ. 2592(VM).**

United States District Court, S.D. New York.

June 30, 2008.

Susan Marie Jennik, William G. Schimmel, Thomas Martin Kennedy, Kennedy, Jennik & Murray, P.C., New York, NY, for Plaintiffs.

Daniel Glenn Ecker, Michael L. Hart, Jonathan Robert Harwood, Traub, Lieberman, Straus & Shrewsberry, LLP, Hawthorne, NY, Jack Babchik, Brian Thomas Carr, Babchik & Young, LLP, White Plains, NY, Suzanne Tongring, Tongring Law Offices, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs James Mahoney ("Mahoney"), as Director of the Transport Workers Union Local 100 Retirees' Association (the "Retirees Association"), and Plan Administrator of the Transport Workers Union Local 100 Retirees' Association Benefit Plan, Joseph Allman ("Allman"), Bernard Beaver ("Beaver"), Frank Ingram ("Ingram"), Laverne Stuckey ("Stuckey"), Maurice Schierman ("Schierman"), and Matthew Tarnowski ("Tarnowski") (collectively, "Plaintiffs"), brought this action against defendants J.J. Weiser & Company, Inc. ("Weiser"), Sanford J. Cohen ("Cohen"), Harvey T. Gluck ("Gluck"), Michael J. Fitzpatrick ("Fitzpatrick"), and John Meehan ("Meehan"), (collectively, "Defendants"), alleging that Defendants breached their fiduciary duties and committed prohibited transactions in violation of the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1104, 1105, and 1106. Plaintiffs also asserted various state law claims, and ERISA claims sounding in fraud.

Defendants previously moved to dismiss the complaint on various grounds before Judge Michael B. Mukasey, who then presided over the case. Defendants' motion was granted in part and denied in part. *See Toussaint v. J.J. Weiser & Co.*, No. 04 Civ. 2592, 2005 WL 356834 (S.D.N.Y. Feb. 13, 2005). Judge Mukasey dismissed all of Plaintiffs' state law claims and all claims sounding in fraud, and held that Plaintiffs' claims for breach of fiduciary duty under ERISA could proceed.

Defendants now bring a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), and Plaintiffs cross-move for partial summary judgment on liability pursuant to Rule 56. For the reasons stated below, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED.

### I. BACKGROUND [1]

Plaintiffs Allman, Beaver, Ingram, Stuckey, Schierman, and Tarnowski (collectively, the "Individual Plaintiffs") are participants in a health benefits plan (the "Plan") open to members of the Retirees Association. Mahoney is the Director of the Retirees Association, a position he has held since October 2002. The Retirees

1. The factual recitation set forth below is drawn from the Amended Complaint, dated January 24, 2005; Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, dated November 5, 2007; Defendants' Joint Memorandum of Law in Support of Motion for Summary Judgment, dated November 5, 2007; Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion for Summary Judgment, dated November 30, 2007 ("Pls.Opp'n"); Declaration of James Mahoney, dated September 26, 2007 ("Mahoney Decl."); Declaration of William G. Shimmel, dated November 2, 2007 ("Shimmel Decl. I"); Declaration of William G. Shimmel, dated November 30, 2007 ("Shimmel Decl. II") and Declaration of Daniel G. Ecker, dated November 5, 2007 ("Ecker Decl."). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

Association is composed of retired employees who were members of Transport Workers Union, Local 100 ("Local 100").

Weiser is a benefits plan administrator and insurance brokerage firm which helped issue the Plan. Fitzpatrick and Meehan are former Directors of the Retirees Association (the "Former Directors"). Meehan was the Director from 1990 until 2000 and Fitzpatrick was the Director from 2000 to October 2002. Gluck is the current Vice President of Weiser and Cohen is the former President of Weiser.

On January 1, 1978, the Transport Workers Union ("TWU") obtained a Limited Medical Expenses and Accidental Death and Dismemberment Policy (the "Policy") from Weiser and Interboro Mutual Insurance Company ("Interboro")[2]. In or about November 1997, Cohen and Gluck purchased Weiser.

The Policy guaranteed certain benefits to members of the Retirees Association who held certificates under the Policy. All members of the Retirees Association were certificate holders in the Policy. Premium payments to Weiser were due by the first of January each year. The Association generally sent a pre-payment of $140,000 to Weiser in December and paid an additional $100,000 in January. Any additional premiums that were expected to be due in that year were paid in the first three months of the year. Additionally, some participants paid Weiser directly by credit card. These credit card payments included the dues owed to the Retirees Association, which Weiser would credit to the Retirees Association as an advance payment of premiums.

Until 2001, dues for the Retirees Association members were $65 per couple and $35 per individual. During that period, premiums for the Policy were $60 per couple and $30 per individual. In 2001, the yearly dues for the Retirees Association members increased to $75 per couple and $45 per individual, and the Policy premiums increased to $65 per couple and $35 per individual. For the year 2001, Retirees Association members paid a total of $354,083.16 in premiums, and the benefits paid out under the Policy totaled $35,362.64. For 2002, those figures were $327,590 paid in premiums, and $14,895.21 in benefits. For 2003, the figures were $307,854.00 in premiums, and $13,041.00 in benefits. Weiser did not disclose this data on the amount of money collected and the amount paid out in benefits for 2001–2003 until January 8, 2004. Weiser has informed Mahoney that there are no records of the amounts paid in benefits under the Policy prior to 2001.

In 2002, Weiser's commission rate increased from 30 percent to 40 percent. Weiser did not inform Plan participants of the change in its commission rate or the amount of its commission. Weiser contends that the commission rate was increased to compensate Weiser for the loss of office space that had been provided by Interboro to Weiser without cost prior to 2002.

In January 2004, the Retirees Association pre-paid $140,000 for premiums. In February 2004, Mahoney ceased payments of premiums to Weiser, which then cancelled the Policy. The Retirees Association replaced the Policy with a self-funded benefit plan (the "Self–Insured Plan"). Under the Self–Insured Plan, the current annual payments for participants is $75 per family and $45 per individual. The new policy increased the benefits provided by reducing the number of days in the hospital necessary to obtain a benefit. In

**2.** Interboro was originally named a defendant in this action. Plaintiffs dropped their claims against Interboro upon learning that it was undergoing a reorganization.

2006, $54,664 in benefits were paid out under the Self–Insured Plan.

Plaintiffs claim that the benefits offered under the Policy were not proportional to the premiums charged. Specifically, Plaintiffs state that the claims-loss ratio for the Policy, which is calculated by dividing the benefits paid by the premiums paid, was below 10 percent for 2001–2003, and they allege that this figure is well below the typical claims-loss ratio in the health insurance industry of 70–75 percent, as calculated by Plaintiffs' expert. Plaintiffs' expert opined that when a claims loss ratio is less than 60 percent, an insurance provider would typically redress the imbalance by reducing premiums the following year, improving benefits, switching insurance companies, or self-insuring. Weiser did not take any of these actions or advise the Retirees Association to take them. Defendants' experts counter that there was no comparable insurance policy available in the market, and therefore, no industry standard for claims-loss ratios, and any comparisons to the claims-loss ratios for other types of insurance programs are irrelevant and immaterial.

In October 2002, prior to being replaced as the Director of the Retirees Association, Fitzpatrick reported that a "break-in" had occurred at the offices of the Retirees Association. Records and documents maintained in the Director's desk were reported missing due to the "break-in." Plaintiffs allege that the "break-in" was staged to allow the Defendants to remove evidence related to kickbacks and gifts. Plaintiffs allege that Weiser engaged in kickbacks and gifts in exchange for excessive premiums paid by the Plan to Weiser. Plaintiffs also allege that on October 8, 1991, Weiser and Interboro contributed $1,000, allegedly a portion of the premiums paid to Weiser, to a reelection campaign for Sonny Hall, the then President of Lo-cal 100. Weiser alleges that this check was never cashed, but rather, was returned to Steven Weiser.

Plaintiffs further allege that between 1999 and 2002, Weiser contributed $9,400 to the Retirees Association. Weiser has admitted that it made contributions to the Retirees Association for social functions, but contends that such payments are not prohibited and are standard practice. Finally, Plaintiffs claim that the financial records of the Retirees Association support their allegations of Weiser's misconduct with regard to elections inside Local 100. In particular, Plaintiffs point to two checks written after a contested Local 100 union officer election: (1) a check written by Fitzpatrick on the Retirees Association account in the amount of $8,500 payable to cash, referred to in the disbursement records as "cash for Kathy"; and (2) a personal check written by Retirees Association employee Kathy Schieck in the amount of $8,500 payable to cash. Other than characterizing these checks as highly unusual, Plaintiffs do not make any other statements as to how these checks support their claim.

Plaintiffs claim that Weiser, Cohen, and Gluck exercised discretionary authority over the administration of the Plan and disposition of Plan assets. Plaintiffs allege that these defendants controlled the Plan with regard to the Policy's premiums, enrollment, claim determinations, solicitation of membership, and distribution of dividends. Plaintiffs also claim that Weiser held itself out to be the sole "Plan administrator" for the Plan. Participants sent all claims to Weiser, and determinations regarding coverage were relayed to participants by Weiser on Weiser letterhead. An undated Letter of Engagement on Weiser letterhead and signed by Cohen and Gluck describes the administrative duties performed by Weiser, and states that Weiser

"provides a billing and claim service for participants." (Engagement Letter, attached as Ex. PP to Shimmel Decl. I.)

Weiser contends that it transmitted claims from participants to Interboro for review, and that Interboro would make a determination regarding coverage based on the parameters it had set, including the types of claims covered and the information required for processing particular claims. Weiser states that it did not have the discretion to make decisions regarding any claims, and that it performed only ministerial functions related to the administration of the Plan.

Plaintiffs also allege that Meehan and Fitzpatrick exercised discretionary authority or control over the administration of the Plan and disposition of Plan assets in their positions as Directors of the Retirees Association. As Directors, they collected and held money from Plan participants to be paid to Weiser as premiums and maintained bank accounts and made discretionary decisions as to whether an individual's contributions would be accepted. Plaintiffs also contend that the Former Directors determined whether the Plan would continue to employ Weiser and Interboro to provide benefits to Plan participants, and decided to increase the premium payments in 2001.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." *Schultz v. Stoner*, 308 F.Supp.2d 289, 298 (S.D.N.Y.2004).

## III. *DISCUSSION*

### A. *GOVERNING LAW*

According to the plain terms of the statute, ERISA "shall apply to any employee benefit plan if it is established or maintained: (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both." *Arnold v. Lucks*, 392 F.3d 512, 518 (2d Cir.2004) (*quoting* 29 U.S.C. § 1003(a)). The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of estab-

lishing such a plan. *See id.* (*citing* 29 U.S.C. § 1002(4)).

Defendants argue that the Plan is not subject to ERISA, because it is sponsored by the Retirees Association, which is neither an employer nor an employee organization. Defendants contend that since the Plan is not governed by ERISA, Mahoney has no standing to bring this claim. Alternatively, Defendants argue that even if the Plan is governed by ERISA, the claim must be dismissed because it does not name the Policy as a party to this action, as required by ERISA. Finally, Defendants contend that even if the Policy were named in the action, Mahoney would not have standing to bring the claim, as he is not a fiduciary of the Policy, but rather, is a fiduciary to a new ERISA Plan created after the Policy was terminated.

Plaintiffs respond that in addressing Defendants' motion to dismiss, the Court already ruled that the Plan is subject to ERISA. Additionally, Plaintiffs argue that there is only one ERISA plan, albeit with a change in benefits from the Policy to the Plan, and Mahoney is a fiduciary to that Plan. The Court agrees with Plaintiffs on these points.

Defendants argue that the only issue Judge Mukasey addressed was whether the Individual Plaintiffs were "participants" in what was alleged to be an ERISA plan for the purpose of deciding whether the Individual Plaintiffs had standing to bring this claim, but that Judge Mukasey did not address whether the Individual Plaintiffs were participants in a plan subject to ERISA. Defendants misstate the Court's holding. In their motion to dismiss, Defendants argued that Plaintiffs' claims should be dismissed, as they were not participants in an ERISA plan. The Court analyzed the statutory definitions of both "participants" and "employee organization" before concluding

that "the plain language of the statute defeats [the Defendants'] argument." *Toussaint v. J.J. Weiser & Co.*, 2005 WL 356834 at *5. The Court stated that "Local 100, an 'employee organization' established the Plan, while the Retirees Association, another 'employee organization' maintains the Plan." *Id.* Furthermore, Defendants' argument that the Court held that Plaintiffs were "participants," but not necessarily "participants in an ERISA plan" is unfounded. The Court would not have ruled that Plaintiffs were participants in some amorphous entity, as such a holding would have been irrelevant to the arguments at issue.

Defendants also rely on Department of Labor ("DOL") Advisory Opinion 92–19A (the "Advisory Opinion"), which reviewed the benefit programs maintained by the Police Benevolent Association of Richmond, Virginia. The Court is unsure as to why Defendants would refer to this Advisory Opinion, as the DOL concluded that the Police Benevolent Association was an "employees' beneficiary association," and therefore an "employee organization" within the meaning of ERISA, and that the benefit program comprised an "employee welfare benefits program." While ERISA does not define "employees' beneficiary association," the DOL does so using a four-part test developed under the Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 302 (1970) (repealed 1975). Under these criteria, the DOL must find that:

(1) membership in the association is conditioned on employment status—for example, membership is limited to employees of a certain employer or union;

(2) the association has a formal organization, with officers, bylaws or other indications of formality;

(3) the association generally does not deal with employers (as distinguished from organizations described in the first

part of the definition of "employee organization," e.g., labor union); and

(4) the association is organized for the purpose, in whole or in part, of establishing a welfare or pension plan.

Advisory Opinion, at 4.

Thus, the conclusion of the Advisory Opinion states a principle opposite to the one espoused by Defendants. Like the Police Benevolent Association referred to above, the Retirees Association falls squarely within the DOL's definition of an "employees' beneficiary association" because membership was conditioned on being a member of the Local 100, the Retirees Association has a formal organization, the Retirees Association does not deal with employers, and part of the purpose of the organization was the establishment of the Plan.

The Court also disagrees with Defendants' argument that Mahoney does not have standing because he is a fiduciary of a new ERISA plan, and agrees with Plaintiffs' characterization that Defendants are confusing a change in the program of benefits provided by the Plan with the Plan itself. The decision to terminate the Policy and seek new benefits for the Retirees Association members was not a decision to terminate the ERISA Plan, but rather, was, as Plaintiffs contend, simply a change in the benefits provided.

■ Accordingly, the Court holds that the Plan is governed by ERISA and that Mahoney has standing to bring the present action.

### C. *SETTLOR FUNCTIONS*

■ Defendants argue that the Court should grant summary judgment, as the selection of the Policy was a settlor function that is not subject to ERISA's fiduciary oversight. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans, and when they undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (internal citations omitted). ERISA's fiduciary duty requirement simply is not implicated where an employer, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan, such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (*citing Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (describing how ERISA does not mandate that employers provide any particular benefits)). "Only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration," does a person become a fiduciary under ERISA § 3(21)(A). *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995).

■ However, the failure to exercise due care in selecting and monitoring a fund's service providers constitutes a breach of a trustees' fiduciary duty. *See Pineiro v. Pension Benefit Guar. Corp.*, 318 F.Supp.2d 67, 93 (S.D.N.Y.2003) (*citing Liss v. Smith*, 991 F.Supp. 278, 300 (S.D.N.Y.1998)). To the extent possible under the circumstances, a fiduciary is obligated to consider the plan's needs, solicit competing proposals, evaluate them with due care, and select the one that could best serve the plan's needs within budgetary constraints. *See id.* Finally, a fiduciary has "an ongoing obligation to monitor the … services provided by service providers with whom [it has] an agreement, to

ensure that renewal of such agreements is in the best interest" of the plan. *Id.*

■ The Court disagrees with Defendants' conclusion that the decision to purchase and renew the Policy was a settlor function not subject to ERISA's fiduciary duty requirement. Rather, the decision is more analogous to the selection of a service provider or the determination of how to invest a plan's assets, which are subject to ERISA's fiduciary oversight. The decision of the Retirees Association to offer supplemental health insurance was a settlor function. However, the determinations to retain Weiser and Interboro in particular, and the subsequent decisions to maintain and renew those relationships, were subject to ERISA fiduciary oversight.

## B. BREACH OF FIDUCIARY DUTY

ERISA provides that a " 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe,* 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (*quoting* 29 U.S.C. § 1002(21)(A) ("Section 1002(21)(A)")). Section 1002(21)(A) creates a bifurcated test: "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson v. E.F. Hutton & Co.,* 957 F.2d 622, 625 (8th Cir.1992); *see also Flanigan v. General Elec. Co.,* 242 F.3d 78, 87 (2d Cir.2001) ("Under this definition, a person ... has fiduciary status only 'to the extent' that he has or exercises the described authority or responsibility." (*quoting F.H. Krear & Co. v. Nineteen Named Trs.,* 810 F.2d 1250, 1259 (2d Cir. 1987))); *Blatt v. Marshall & Lassman,* 812 F.2d 810, 813 (2d Cir.1987) ("The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control.").

### 1. Weiser

■ Plaintiffs claim that Weiser is a fiduciary because it had the authority to grant or deny claims, held itself out to be the sole administrator of the Plan, and had control over Plan assets. However, Plaintiffs' claims for breach of fiduciary duty center on the alleged payment of exorbitant premiums, the disparity between the premiums paid and the benefits received, the failure to investigate or negotiate more reasonable alternatives, the failure to disclose the financial facts to Plan participants, the failure to file necessary paperwork, the failure to afford a reasonable claims procedure, and the failure to seek or demand refunds to Plan participants. Nowhere in the Complaint do Plaintiffs allege breaches with regard to the areas in which they claim that Weiser exercised discretion. Plaintiffs' only allegation in this regard is that the Weiser "determined or effectively recommended" the amounts paid and collected for premiums. (Amended Complaint, ¶¶ f-g.) Plaintiffs' conclusory statement that Weiser determined the amount of premiums carries no weight, as there is insufficient evidence on the record before the Court to demonstrate that Weiser had the authority to force the Retirees Association to accept their determinations. Regardless, the Retirees Association's acceptance of any recommendation by Weiser to purchase insurance is not sufficient to convert Weiser into a fiduciary. *See Grohowski v. U.E. Sys., Inc.,* 917

F.Supp. 258, 261 (S.D.N.Y.1996) (holding that a recommendation to purchase life insurance does not constitute investment advice) (*citing Flacche v. Sun Life Assur. Co. of Canada*, 958 F.2d 730, 734–35 (6th Cir.1992); *Consolidated Beef Indus. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir.1991) (holding that a person who markets insurance is merely a salesperson not a fiduciary); *American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Society of the United States*, 841 F.2d 658, 664 (5th Cir.1988) (stating that "simply urging the purchase of [insurance] does not make an insurance company an ERISA fiduciary")).

Plaintiffs correctly assert that insurance brokers have been found to be fiduciaries under certain circumstances where they exercised discretionary authority or control. *See United States v. Glick*, 142 F.3d 520 (2d Cir.1998) (upholding sentencing enhancement for insurance broker convicted of bribery based on fiduciary status because the broker had discretionary control over plan assets); *Reich v. Lancaster*, 55 F.3d 1034 (5th Cir.1995)(holding that the trial court did not err in finding that insurance agent was the decision maker with regards to insurance purchases and the payment of compensation to those who procured the insurance policies.)

However, there must be some connection between the discretion exercised and the breach of duty. The "to the extent" language in ERISA limits the reach of the fiduciary obligation to only those activities over which the alleged fiduciary has discretion. *See In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 472 (S.D.N.Y.2005) (*citing Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir.1993) ("Fiduciary status ... is not 'an all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.' ")) (*quoting*

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992)); *see also Silverman v. Mutual Ben. Life Ins. Co.*, No. 95 Civ. 0500, 1996 WL 628229, at *4 (E.D.N.Y.1996) ("[A] person may be a 'fiduciary' with respect to a plan when carrying out certain activities, and yet not be a fiduciary when performing other activities."); *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir.1994) ("[T]his definition does not make a person who is a fiduciary for one purpose a fiduciary for every purpose.").

Weiser may or may not have been a fiduciary with regard to the processing of claims, as Plaintiffs have put forth evidence demonstrating Weiser's authority to grant or deny claims. However, the Complaint does not allege that Weiser abused its discretion in denying claims that should have been approved. Rather, the Complaint focuses on the payment of premiums Plaintiffs deem excessive. As previously stated, Weiser did not have the discretion or authority to purchase the insurance policies or to approve the payment of premiums. The alleged receipt of excessive premiums and payment of high commissions does not transform an insurance company into an ERISA fiduciary. *See Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.*, 105 F.Supp.2d 889, 897 (N.D.Ill.2000).

#### 2. *Sanford J. Cohen and Harvey T. Gluck*

Because the Court has found that Weiser was not a fiduciary with regard to the conduct at issue, the Court necessarily finds that Cohen and Gluck, as officers of Weiser, were also not fiduciaries with regard to the claims brought by Plaintiffs.

#### 3. *Michael J. Fitzpatrick and John Meehan*

Plaintiffs claim that former Directors Fitzpatrick and Meehan were fiduciaries

as they had exercised their discretion to retain or continue to retain Weiser as Plan Administrator, continued to purchase and provide benefits under the Policy, and decided not to otherwise invest Plan assets. Defendants counter that the Former Directors were not fiduciaries because they were not named in any documents that designates them as fiduciaries, and regardless, the decision to provide insurance is a settlor function, not a fiduciary function. Defendants also argue that the Former Directors reported to the chairman of the Retirees Association, the Board of Trustees, and president of Local 100, and that they did not have the authority to make decisions on their own.

First, as previously stated, while the Court agrees with Plaintiffs that the decision to provide insurance may be a settlor function, Plaintiffs' claims involve the type of insurance purchased, and the choice of Weiser as a service provider, which cannot be considered settlor functions. Second, as noted, for ERISA purposes, the definition of fiduciary is a functional one. Therefore, that the Former Directors were not named as fiduciaries in any document is not dispositive. Rather, the question is whether they exercised discretionary authority or control over the Plan.

The issue of whether the Former Directors exercised discretionary authority is a closer question, and one that the Court cannot determine at summary judgment stage, because too many fact issues remain in contention. Meehan stated at his deposition that one of his duties was to maintain the benefit plan for the Retirees Association Members. (*See* Deposition of John Meehan, dated Apr. 7, 2007, 13:14–15, attached as Ex. 2 to Shimmel Decl. I.) Fitzpatrick testified at his deposition that he had approached other insurance companies to determine whether a small increase in premiums could garner additional benefits for the Retirees Association members and whether the Retirees Association could improve upon the insurance offered to its members. (*See* Deposition of Michael J. Fitzpatrick, dated Aug. 1, 2006, 56:10–61:24, attached as Ex. C to Shimmel Decl. I.)

However, such admissions do not necessarily indicate that Former Directors exercised any authority to retain the Policy, or actually had the authority to terminate the Policy and obtain a new insurance policy. Willie James, the former President of Local 100, testified that Meehan had the authority to make decisions without his review, but that Meehan would come to him for any decisions involving the Retirees Association funds. (*See* Deposition of Willie James, dated Apr. 24, 2006, 15:18–25, attached as Ex. 25 to Ecker Decl.) Additionally, Mahoney did not terminate the Policy on his own, but rather did so at the direction of Roger Toussaint, the current President of Local 100. (*See* Letter to Jimmy Mahoney, dated Jan. 27, 2004, attached as Ex. J to Mahoney Decl.)

Accordingly, the Court holds that there is a question of fact regarding whether the Former Directors were fiduciaries of the Plan. Nonetheless, even if the Former Directors were fiduciaries of the Plan, the Court finds that they did not breach their fiduciary duties.

ERISA employs a prudent man standard of care and requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a).

As fiduciaries, the Former Directors would have had a continuing duty to review plan investments, and if Plaintiffs are correct, that duty was violated each time the Former Directors renewed imprudent contracts with fund administrators. *See Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003); *see also Buccino v. Continental Assur. Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y.1983) (finding that fiduciaries were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments, and their failure to do so gave rise to a new cause of action each time the Fund was injured by its continued possession of individual policies, that is, each time it made a premium payment).

If the Former Directors are considered fiduciaries, the question then becomes whether they breached their fiduciary duties by renewing the Policy and by not demanding a rebate or refund for the excess premiums. The parties do not dispute that no other insurance policy existed or currently exists that would have provided the Retirees Association members with greater benefits for lower premiums. Therefore, the issue is whether the Former Directors breached their fiduciary duties by electing to maintain the Policy rather than self-insuring. Under the Self–Insured Plan, the Retirees Association members have been paying the same amount in premiums as charged under the Policy, and have received a similar, albeit higher, amount in total benefits.

That the Former Directors (and any other decision makers) chose to retain an insurance policy that undisputedly provided the most benefits to participants for the premiums charged, rather than self-insuring and having the Retirees Association internalize the risk was a business decision, and one that impacted only the Retir-

ees Association, not the participants. And that no other insurance company or policy offered benefits comparable to or better than the Policy is hard to reconcile with Plaintiffs' sweeping statements that the claims-loss ratio was "extraordinarily low" and "so outside the bounds of the industry norm." (Pls. Opp'n 15.) Plaintiffs' response that it is not surprising that other insurance companies did not offer such "substandard coverage" is at best speculative or conclusory, and not sufficient to counter this fact. (*Id.*) As profit-seeking ventures, insurance companies presumably would have been eager to provide increased coverage for these premiums if Plaintiffs' arguments were correct.

Finally, even if the Self–Insured Plan constitutes a better deal for the Retirees Association, and consequently for its members, the Court cannot hold that in such instances where the insurance policies provided by the market are possibly inferior choices, a fiduciary's only option is to self-insure and risk subjecting his or her organization to significant expenditures should the payments of benefits be greater than the amount collected in premiums.

Finally, as to demanding a rebate or refund for the payment of excessive premiums, Plaintiffs have not demonstrated that the Former Directors had a right to request and obtain such relief.

Accordingly, the Court finds that the Former Directors did not breach their fiduciary duties in retaining Weiser and the Policy.

## D. *PROHIBITED TRANSACTIONS*

Plaintiffs contend that Defendants committed prohibited transactions through the exorbitant payment of Plan assets and participants' contributions to Weiser, and that the Former Directors engaged in self-dealing by accepting personal favors and political donations from Weiser in violation of

ERISA § 406. *See* 29 U.S.C. § 1106. The Court disagrees.

### 1. *Prohibited Transactions*

A claim regarding prohibited transactions is not dependant on a finding that Weiser is a fiduciary, as ERISA creates a separate cause of action against non-fiduciaries who are "parties in interest" and who engage in "prohibited transactions" under ERISA §§ 406 and 408. 29 U.S.C. §§ 1106(a), 1108(b). A "party in interest" is defined by ERISA as "any fiduciary . . . [or] person providing services to such plan. . . ." 29 U.S.C. § 1002(14). ERISA § 406(a)(1) states that except as provided in § 1108, a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest." Under the exception to this provision, "[c]ontracting or making reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan" is permitted "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b).

If Weiser had received excessive compensation for its services, it would indeed have engaged in a prohibited transaction, as the rendering of services is permitted only if the payment of compensation is "reasonable." However, Plaintiffs' claim focuses on the difference between the premiums paid for the Policy as unreasonable compared with the benefits paid out to the Retirees Association members. There has been no evidence of a prohibited transaction involving Weiser, because Plaintiffs have not introduced any evidence regarding the reasonableness of Weiser's compensation.

Accordingly, Plaintiffs' motion for partial summary judgment on liability is denied with respect to their claim regarding prohibited transactions, and Defendants' motion for summary judgment regarding this claim is granted.

### 2. *Self–Dealing*

The prohibition against self-dealing provides that "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 26 (2d Cir.2002) (*quoting* 29 U.S.C. § 1106(b)(1)). Even if the Court were to find that the Former Directors were fiduciaries of the Plan, there is little or no evidence that they engaged in self-dealing, as there is no evidence on the record that the Former Directors dealt with the assets of the Plan in their own interest or for their own account. The Complaint and the Plaintiffs' papers contain conclusory allegations regarding the benefits reaped by the Former Directors, but there is insufficient evidence to support these accusations. While Weiser has admitted making contributions to the Retirees Association, there is no basis for concluding that the Former Directors personally benefited from these alleged "kickbacks." Additionally, the only allegation regarding political donations is that Weiser attempted to donate $1,000 to the campaign of Sonny Hall, who is not a defendant in this action.

Accordingly, Plaintiffs' motion for partial summary judgment on liability is denied with respect to their claim regarding self-dealing, and Defendants' motion for summary judgment regarding this claim is granted.

### E. *MOTION TO STRIKE*

On December 20, 2007, Defendants moved to strike Plaintiffs' Counterstate-

ment to Defendants' Rule 56.1 Statement for failure to follow Local Civil Rule 56.1. In light of the Court's granting of Defendants' Motion for Summary Judgment, Defendants' Motion to Strike is denied as moot.

## III. *ORDER*

**ORDERED** that the Motion for Partial Summary Judgment on Liability (Docket No. 88) of plaintiffs James Mahoney, as Director of the Transport Workers Union Local 100 Retirees' Association, and Plan Administrator of the Transport Workers Union Local 100 Retirees' Association Benefit Plan, Joseph Allman, Bernard Beaver, Frank Ingram, Laverne Stuckey, Maurice Schierman, and Matthew Tarnowski herein is DENIED; and it is further

**ORDERED** that the Motion for Summary Judgment (Docket No. 95) of defendants J.J. Weiser & Company, Inc., Sanford J. Cohen, Harvey T. Gluck, Michael J. Fitzpatrick, and John Meehan, (collectively, "Defendants") herein is GRANTED; and it is further

**ORDERED** that Defendants' Motion to Strike (Docket No. 120) herein is DENIED.

The Clerk of Court is directed to withdraw any pending motions and to close the case.

**SO ORDERED.**